Submitted on briefs December 4, 1918, reversed and remanded
January 28, 1919.

## AYA *v.* MORSON.

### (178 Pac. 207.)

**Pleading—Amendment—Changing Cause of Action.**

1.  Amendment of complaint in action to enforce contract for transfer of liens *held* not open to objection of changing cause of action.

**Contracts—Modification or New Contract.**

2.  A contract *held* not a modification of a contract by which plaintiff was to receive stock for services, but a new and independent contract, whereby the stock due plaintiff was to be delivered or exchanged for liens.

> [As to effect of the seventeenth section of the statute of frauds on sales of corporation stock, see note in Ann. Cas. 1917C, 991.]

**Evidence—Judicial Notice—Carey Act Liens.**

3.  The Carey Act liens being provided for by law and by executive act, judicial notice will be taken thereof under Section 729, subdivision 3, L. O. L.

**Frauds, Statute of—Interest in Land—Carey Act Liens—"Real Property or Interest Therein."**

4.  Carey Act liens for reclaiming land are not real property or an interest therein, within Section 808, subdivision 6, L. O. L., requiring agreement for sale of such property or interest to be in writing.

**Frauds, Statute of—Sale of Personalty—Barter.**

5.  A barter is within Section 808, subdivision 5, L. O. L., requiring, under certain conditions, agreement for sale of personalty to be in writing.

**Trial—Offer of Proof—Sufficiency.**

6.  The allegation of the complaint and plaintiff's offer of proof that he did release, seeming to be of a present release at the time, he should have been allowed to make his proof, that it might be seen whether it actually took place, and was so accomplished as to take out of the statute of frauds an agreement for transfer of liens in consideration of release of agreement to deliver stock.

**Frauds, Statute of — Performance — Sale of Personalty — Release of Obligation.**

7.  To take out of the statute of frauds an agreement for transfer of liens in consideration for release of agreement to deliver stock, the release must be effected by an unequivocal act.

## From Multnomah: ROBERT TUCKER, Judge.

In Banc.

The questions presented in this case are in brief:

First, whether an agreement to transfer liens created under the Carey Reclamation Act, and generally known as "Carey Act Liens," is within subdivision 6 of section 808 of our Code, substantially re-enacting the statute of frauds and providing that an agreement "for the sale of real property, or of any interest therein," is void unless in writing.

Second, if such liens are not real property but personal in their nature, was the cancellation and release of an obligation to turn over certain shares in a canal company, which were then due to the intended assignee of the Carey Act Liens, sufficient part payment, to take the transaction out of subdivision 5 of Section 808, L. O. L., prohibiting "an agreement for the sale of personal property at a price not less than $50, unless the buyer accept and receive some part of such personal property, or pay at some time part of the purchase money," unless the sale is evidenced by writing.

It is alleged in the complaint in substance that the Des Chutes Land Company and its successor, Morson Land Company, were engaged in the reclamation of lands in Crook County, Oregon, under the Carey Act, and that the defendant Morson was the "principal stockholder, chief agent, manager, etc., of said corporation," and also of the Canal Construction Company, which seems to have been an organization subsidiary to the Des Chutes Land Company.

That the plaintiff Aya was employed by said Morson for a term of three years to assist said Morson in promoting said corporation, the Des Chutes Land Company, organizing the same, and selling its stock. For

these services it is alleged said Morson was to pay Aya the sum of $150 per year for each of the first two years, and $200 for the third year, and should assign to him "Carey Act Liens" on 160 acres of land, and should transfer to him 500 shares of the stock in the Canal Construction Company, supposed to represent 10 per cent of its capital stock.

Then follows paragraph 7 as it was in the original complaint, to wit:

"That after the contract between plaintiff and defendant had expired, said defendant Morson individually and as president and manager of the said the Des Chutes Land Company came to this plaintiff and informed this plaintiff that he wanted to get out a bond issue on a portion of the property of the Des Chutes Land Company, for the purpose of furnishing money for the Des Chutes Land Company; that said Morson stated at said time that in order to get out said bond issue it would be desirable and necessary to get rid of the contract between the Des Chutes Land Company and the Canal Construction Company. That at said time the said Morson had not delivered to plaintiff any of the stock in the Canal Construction Company, as provided in the contract attached hereto; that at said time plaintiff informed said defendant Morson that said stock had not been delivered, and that even though it were delivered a release of said contract as suggested by said Morson would make said stock practically worthless; that thereupon the defendants J. E. Morson and the Des Chutes Land Company promised and agreed, provided plaintiff would agree to the cancellation of said contract, that the Des Chutes Land Company would assign to the plaintiff $6,000 worth of liens on the West Side Tract of the said irrigation project, said liens being owned by the Des Chutes Land Company, which assignment was to be made within a reasonable time; that it was mutually agreed between the parties that the plaintiff would take the said liens and release his right under the

Canal Construction Company contract, provided said liens were given him from the property of the defendant located in Crook County, Oregon; that said defendants and each of them then and there agreed that upon the release of said contract said assignment of liens would be delivered to this plaintiff within a reasonable time, in satisfaction of his claim for stock in the Canal Construction Company. That plaintiff did thereupon release his interest in and to the Canal Construction Company, and agreed to the release and cancellation of the irrigation contract existing between the Canal Construction Company and the Des Chutes Land Company, the consideration therefor being the agreement of the Des Chutes Land Company and J. E. Morson to assign to this plaintiff liens on the West Side tract, as hereinbefore set out."

This paragraph seems to have been amended at the trial by leave of the court, to read as follows:

"That while the contract attached hereto and marked Exhibit 'A' was still in full force and effect, and after plaintiff had performed all the terms, covenants and conditions of said contract on his part to be performed, and after defendants J. E. Morson and the Des Chutes Land Company had complied with said contract in part, in that the Des Chutes Land Company and J. E. Morson had assigned to this plaintiff liens on 160 acres of land of the Des Chutes Land Company, and before the said defendants had delivered to this plaintiff the stock provided for in said contract in the Canal Construction Company, the defendant, J. E. Morson, came to this plaintiff and informed this plaintiff that he wanted to get out a bond issue on the property of the Des Chutes Land Company for the purpose of furnishing money for the Des Chutes Land Company; that said defendant Morson stated at said time that in order to get out said bond issue it would be desirable and necessary to get rid of the contract between the Des Chutes Land Company and the Canal Construction Company; that at said time the said Morson had not delivered to the plaintiff any

stock in the Canal Construction Company, to which the plaintiff was entitled as provided in the contract attached hereto. That at said time plaintiff informed said Morson that said stock had not been delivered and that a cancellation of said contract would make said stock in said the Canal Construction Company practically worthless, and that as a stockholder of the Canal Construction Company he would not agree to the cancellation of the said contract unless he received payment for his services in some other manner; that thereupon the defendant J. E. Morson stated to this plaintiff that in lieu of the stock in the Canal Construction Company, as provided in said contract, he, the said J. E. Morson, and the said the Des Chutes Land Company, would give to the plaintiff $6,000 worth of liens on the West Side Tract of said irrigation project, provided said plaintiff would release the defendant J. E. Morson from the obligation to deliver the stock in the Canal Construction Company, and provided said plaintiff would agree, as a stockholder of the Canal Construction Company, to the cancellation of the Canal Construction Company's contract. That said defendant J. E. Morson at said time stated that said liens were owned by the Des Chutes Land Company, that he would cause said corporation to assign said liens to the plaintiff within a reasonable time, and that said assignment should be accepted by this plaintiff in lieu of stock in the Canal Construction Company; that it was mutually agreed between the parties that plaintiff would accept said liens and release his interest as a stockholder in the Canal Construction Company and vote for a cancellation of the Canal Construction Company contract.

"That at said time said defendants, J. E. Morson and the Des Chutes Land Company, agreed to give the plaintiff liens upon the property of the defendant the Des Chutes Land Company in Crook County, Oregon; that said defendants then and there agreed, upon the release of said contract with the Canal Construction Company and the release of the obligation of J. E. Morson to deliver the stock in the Canal Construction

Company, that the said assignment of said liens would be delivered to the plaintiff within a reasonable time, in satisfaction of plaintiff's claim against the Canal Construction Company.

"That plaintiff did thereupon release his interest in and to the Canal Construction Company, and agreed to the release and cancellation of the irrigation contract then existing between the Canal Construction Company and the Des Chutes Land Company, the consideration therefor being the agreement of Morson and the Des Chutes Land Company to deliver to the plaintiff said six thousand dollars' worth of liens. That said agreement constituted a modification of that portion of said contract attached hereto and marked Exhibit 'A' which provides for the delivery of stock in the Canal Construction Company to this plaintiff.''

1. It is urged on behalf of respondent that this amendment so far changed the cause of action that it was improperly allowed, but it is thought the amendment was clearly within the liberal rule declared by our statute and announced by many of the decisions in this state.

At the trial the plaintiff, being a witness in his own behalf, was asked:

"Q. Now, Mr. Aya, will you go ahead and tell the facts that led up to the agreement set forth in the complaint, and then state what was said by Mr. Morson and you.

"A. You mean this $6,000 agreement?·

"Q. In February, 1914.

"Thereupon there was an objection to 'any testimony relating to this contract, to show its terms or to prove the contract itself, to prove any verbal contract between Mr. Morson and plaintiff herein upon the grounds that they have alleged that the consideration to be paid was liens upon land, and that that is an interest in land, and that the contract should be in writing.'

"Whereupon the court said, 'You are objecting to anything relating to the agreement?'

"A. Yes.

"The Court.  Being oral?

"A. Yes.

"The Court.  Well, as I understand the case, as it presents itself, your objection is based upon the ground that the statute of frauds obtains?

"A. Yes.

"The Court.  Well, as I understand it, there is no contention here but what the contract was not in writing.

"A. (On behalf of plaintiff.)  No, there is no question about that.  The contract was not in writing. That is, this last contract of February, 1914, was not in writing.

"The Court.  Yes.  And that, furthermore, there is no controversy but what the subject matter of the contract was these liens, as provided for under the Carey Act?

"A. Yes.

"The Court.  These liens of six thousand dollars in value?

"A. (On behalf of plaintiff.)  There is no question about that.

"The Court.  Under that situation, I think I will sustain the objection."

Thereupon Mr. Sheppard, attorney for plaintiff, made the following offer of proof, that the plaintiff, if permitted to testify, would testify as follows:

"That in lieu of the stock in the Canal Construction Company, which defendant Morson was to give him as compensation for his services performed under a contract attached to the complaint and introduced in evidence and marked Plaintiff's Exhibit 'A,' some six thousand dollars' worth of liens; that at the time the agreement was made Morson was the president, manager and principal stockholder of the Des Chutes Land Company and had authority to make such an

agreement; that in February of 1914 the defendant Morson, individually and as president of the Des Chutes Land Company, came to the plaintiff and informed the plaintiff that he desired to get out a bond issue on the property of the Des Chutes Land Company, that it was desirable and necessary that the contract of the Des Chutes Land Company with the Canal Construction Company should be canceled; that at said time the plaintiff was entitled to 10 per cent of the stock of the Canal Construction Company under a contract which is attached to the complaint; that Morson wanted the plaintiff to release his interest as a stockholder in the Canal Construction Company and vote for the cancellation of the contract; that in order to induce Aya, the plaintiff, to vote for the cancellation of said contract and to release Morson from delivering 10 per cent of the stock in the Canal Construction Company to the plaintiff the defendant Morson, individually and as president and manager of the Des Chutes Land Company, promised and agreed to assign to the plaintiff six thousand dollars' worth of liens.

"The Court. That is, orally agreed?

"Mr. Sheppard. Yes; in full payment for the services performed by Aya under a contract known as Exhibit 'A'; that thereupon Aya agreed to release Morson from his obligation to deliver said stock in the Canal Construction Company and did release him, and did vote for the cancellation of the Canal Construction Company contract, thereby making the stock in the Canal Construction Company worthless; that Morson, when the liens were demanded of him, never denied but that he was to deliver and pay them to the plaintiff, never refused to deliver them until shortly before this lawsuit was brought; that Morson, at said time, agreed to assign the said liens from the West Side tract of his irrigation project in Crook County, and that said assignment was to be made within a reasonable time; that the plaintiff Aya has fully performed, in every particular, his part of the contract; that Morson, has in part complied with the contract attached to plaintiff's complaint and marked Exhibit 'A' and in-

troduced in evidence, in that he has already assigned one hundred and sixty acres of liens, as provided in said contract, to the plaintiff; and that the plaintiff will further testify that said $6,000 worth of liens are worth the sum of $6,000.''

Said offer was by the court rejected and exception was duly taken, whereupon the defendants moved for a nonsuit, which was granted, and plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief submitted over the name of *Mr. C. A. Sheppard.*

For respondents there was a brief submitted over the names of *Mr. A. C. Shaw* and *Mr. W. H. Fowler.*

BENNETT, J.—2. It is urged on behalf of appellant that the contract for the release of the canal stock and the assignment of the Carey Act Liens, while oral in itself, was only a modification of the previous original contract between Morson and the plaintiff, and as such modification was not within the statute of frauds, because the original contract was then fully executed, except as to the mere transfer of the canal stock by Morson in payment of plaintiff's services.

But it is thought that this latter transaction was in the nature of a new and independent contract, by which the canal stock due to the plaintiff was to be delivered or exchanged for the Carey Act Liens, and, therefore, it is not necessary to consider whether a written contract could be modified by a parol addition, which would itself independently be within the statute of frauds.

3, 4. Our Code in Section 808, L. O. L., re-enacts many of the provisions of the English statute of

frauds, but subdivision 6 does not seem to be as broad
as the original statute and only restricts "the sale of
real property or of any interest therein," whereas the
English act provides:

"No action shall be brought upon any contract or
sale of tenements or hereditaments, or any interest in,
*or concerning them,* unless the agreement upon which
such action shall be brought, or some memorandum or
note thereof, shall be in writing," etc.: Smith on
Frauds and the Statute of Frauds, § 354, p. 451.

As a consequence, some verbal agreements in rela-
tion to lands might not come within our statutes which
were within the original statutes of frauds: *Anderson*
v. *Powers,* 59 Tex. 213. It is plain the contract to
transfer these liens comes within Section 808, subdivi-
sion 6, L. O. L., if prohibited at all, for it is an "agree-
ment" to transfer and *not* a transfer under Section
804, L. O. L.

The question then in this regard is, whether liens
under the Carey Act are real property or an interest
therein, and, therefore, required to be in writing by
subdivision 6. The state of the record in the case
leaves it open to some question as to just what was
meant by Carey Act liens in the contracts in question.
It is assumed, however, that they refer to the segre-
gated liens provided for by the contract between the
State of Oregon and the Des Chutes Land Company
for lands being reclaimed under the Carey Act. These
liens being provided for by law and by executive act,
we take judicial knowledge of them under Section 729,
subdivision 3, L. O. L. The contract between the Des
Chutes Land Company and the State of Oregon,
provides:

"The party of the second part hereby declares, fixes
and establishes the sum of $36 per acre for each acre

of land embraced in this contract which may be re-
claimed, as the amount due and payable to said party
of the first part for the actual cost and necessary ex-
penses of the reclamation of said lands, and now
hereby *creates a lien* on and against said lands, which
shall be valid *on and against the separate legal sub-
divisions,* of the land reclaimed from the date of recla-
mation until disposed of or released to settler, together
with interest at 6 per cent per annum on the full
amount of said lien from the date of reclamation until
paid'': See Report of Desert Land Board, 1911, p. 98,
par. 10.

And the contract authorized by the state between
the Des Chutes Land Company and the settlers, con-
tains the following:

''The purchaser agrees for himself, his heirs, admin-
istrators, executors and assigns, to pay the sum of ——
dollars, it being the amount of the lien due the com-
pany for reclamation as fixed by the said contract with
the State of Oregon, with interest thereon at the rate
of 6 per centum per annum from the date of reclama-
tion. Payments for said amount are to be made as
follows: Cash, as above stated, and the balance of ——
dollars in —— equal payments, with interest thereon
from the date of this contract, if executed on or after
the date of reclamation, at 6 per centum per annum,
payable annually at the office of the company, either in
Portland or Crook County, Oregon, all of which de-
ferred payments are for convenience only, evidenced
by the purchaser's promissory notes of even date here-
with, which shall bear interest from date, if given
after date of reclamation, otherwise from date of rec-
lamation, and said notes shall show on their face that
they represent the unpaid balance on the payor's rec-
lamation contract, dated —— day of ——, 19—.''

There may have been some slight changes in these
provisions at different times, but they have remained
substantially the same.

It seems to be too well settled in this state to be any longer in question that mortgages and liens are not "real property, or any interest therein": *Anderson* v. *Baxter,* 4 Or. 105, 110; *Sellwood* v. *Gray,* 11 Or. 534, 537 (5 Pac. 196); *Watson* v. *Dundee M. & T. I. Co.,* 12 Or. 480 (8 Pac. 548); *Adair* v. *Adair,* 22 Or. 115, 131 (29 Pac. 193); *Kinney* v. *Smith,* 58 Or. 158 (113 Pac. 854); *Hillman* v. *Young,* 64 Or. 73, 82 (127 Pac. 793, 129 Pac. 124); *Casner* v. *Hoskins,* 64 Or. 254, 286 (128 Pac. 841, 130 Pac. 55); *Hughes* v. *Lansing,* 34 Or. 118, 124 (55 Pac. 95, 75 Am. St. Rep. 574).

In the case of *Anderson* v. *Baxter,* 4 Or. 105, 110, it is said:

"That a suit to foreclose a mortgage is not for the determination of any right or claim to, or interest in real property, but a proceeding to have the mortgaged property adjudged to be sold to satisfy the debt secured thereby. * * If it were a suit to divest a party of title, or to establish some right regarding the title to real property, it would stand upon a different footing."

So in *Sellwood* v. *Gray,* 11 Or. 534, 537 (5 Pac. 196), it is said:

"In this state a mortgage does not operate, as at common law, to vest in the mortgagee an estate upon condition. * * It is, in fact, what the parties intended, and as equity treated it, a mere security for the repayment of the debt or obligation, and serves simply to create a lien or encumbrance upon the property. * * The mortgage works no change of ownership in the property."

In *Casner* v. *Hoskins,* 64 Or. 254, 286 (128 Pac. 841, 130 Pac. 55), it is said by Mr. Justice MOORE:

"The rule is quite general that, a mortgage being only an incident of a debt, the validity of the security, so far as it may be affected by usury, is, in the absence

of any enactment to the contrary, governed by the principles of law applicable to personal contracts.''

In *Hughes* v. *Lansing,* 34 Or. 118, 124 (55 Pac. 95, 75 Am. St. Rep. 574), a mechanic's lien was involved and the question was as to the waiver of the same. It was claimed, as is said by the court,

''That it is a transaction concerning real property in which the supposed agent, Baker, had no competent authority to bind Goodale under the statute of frauds.''

And Chief Justice WOLVERTON, delivering the opinion of the court, said:

''As it concerns the second ground of objection, it is clear that the mere right or privilege of preserving and perpetuating a mechanic's lien upon buildings is not an interest in land.''

So whatever may be the rule in other states it may be considered as settled in Oregon, that a mortgage or lien on land is a mere incident to the personal debt, and is not real property or interest therein, within the meaning of our statute of frauds.

5-7. But there is still left the question as to whether or not the agreement here presented to transfer these liens was void under subdivision 5 of this section, as an agreement for the sale of personal property greater than $50.

This transaction was a barter rather than a sale, being in the nature of a delivery of the right to the canal stock for the right to the lien. Nevertheless, barter has been generally held to be within such statutes: 20 Cyc. 239, subd. B, and authorities cited.

The only question, therefore, is whether or not the canceling of the agreement for the canal stock and the release of Morson from his agreement to deliver

the same, was a payment of the price or some part of the price of the liens.

At the time of this new transaction the plaintiff seems to have been clearly entitled to the transfer of 500 shares of the canal company's stock. The allegation of the complaint is,

"that plaintiff did thereupon *release his interest in and to* the Canal Construction Company; and agreed to the release and concellation of the· irrigation contract then existing between the Canal Construction Company and the Des Chutes Land Company," etc.

The offer of proof is

"that thereupon Aya agreed to release Morson from his obligation to deliver said stock in the Canal Construction Company and *did release him* and did vote for the cancellation of the Canal Construction Company contract."

It does not appear how the release of Morson was accomplished but the·allegation and offer of proof seems to be of a present release at that time, and it is thought that the plaintiff should have been permitted to make his proof upon that allegation, when·it would have appeared whether the release and cancellation actually took place, as alleged, and whether it was accomplished in such a way as to take the agreement for the transfer of the liens out of the statute.

In *Milos* v. *Covacevich,* 40 Or. 239, 241 (66 Pac. 914), the agreement was to deliver a fishing net to the plaintiff in part payment of a balance due him for services, and the question was whether the agreement to accept the fishing net on the previous indebtedness took the transaction out of this subdivision of the statute, and it is said by Mr. Chief Justice BEAN:

"The mere oral agreement of the creditor that the goods shall go in settlement of the debt is not suffi-

cient to satisfy its requirement. Unless the contract is in writing, the statute requires something more than mere words, however carefully they may be considered. * * There must be acts which, in the nature of things, are less open to misconstruction and misunderstanding. If payment is relied on, it must be made in money or property, or in actual discharge, in whole or in part, of some antecedent debt. A mere agreement to apply the purchase money on the debt will not suffice, because the contract would still rest in words, and nothing more. There must be an actual cancellation and discharge of the indebtedness on the books of the creditor, or a written receipt executed by him, or some other like unequivocal act, not resting in mere words, which will bind him.''

In this case we cannot say from the record before us, whether the release and cancellation of the canal stock in payment for the liens was effected by such unequivocal act as will bring the case out of the statute of frauds. That will no doubt appear definitely one way or the other in another trial of the cause.

The statute of frauds was adopted originally for a good and beneficial purpose. It seems to have stood the test of time for it has been re-enacted in some form in the Codes of almost every state in the Union. But it seems there is no law which human foresight can provide, however good in its general result, which does not sometimes work a hardship in particular instances and become a cover for wrong and unjust advantage.

It would not be right to presume in any case because a party takes advantage of the statute that he is attempting to perpetrate a fraud under cover of its shadow. It would not be right to say that the defendant is in that position in this case; nevertheless, there are some things in the record which suggest, as contended by the plaintiff, that this may possibly be so.

We have no choice but to declare the principles of law as they are established by the legislative enactments.

It is sometimes said, "that the statute will not be permitted to become a cover for fraud," but we know of no way of preventing it from sometimes having that effect, at least in a court of law, if one party. is cunningly dishonest and the other improvident.

It is also urged that the contract for the transfer of the lien was void because a part of the consideration was the voting for the cancellation of the canal company's contract with the Des Chutes Land Company, and thereby the rendering of the canal company's stock worthless. And it is urged that where the director of a corporation receives a promise or an agreement in consideration, that he votes against the interest of the corporation the promise or contract to him is void.

But we cannot see that this question is in the record. We cannot find from the record that the plaintiff *was* a director of the corporation. There is such an allegation in the answer, but it is denied in the reply and we cannot assume that it is so in the absence of proof.

Besides, the doctrine invoked would only apply in the case of fraud, and here there might not be any fraud. The canal company's contract is alleged to have been canceled by vote of the stockholders, as well as the directors, and it may be that all of the stockholders consented to the transaction. All of these are questions which are not presented at this state of the case.

It follows the case should be reversed and remanded to the court below for a new trial.

REVERSED AND REMANDED.