## INVESTORS SYNDICATE et al. v. SMITH et al.

### No. 8881.

Circuit Court of Appeals, Ninth Circuit.
July 12, 1939.

Verne Dusenbery and Herbert L. Swett, both of Portland, Or., Stephen H. Boyles, of Minneapolis, Minn., and Chas. W. Redding, of Portland, Or., for appellants.

S. J. Bischoff and Ralph A. Coan, both of Portland, Or., for appellees intervening creditors and trustee.

McCamant, Thompson, King & Wood, of Portland, Or., for appellee trustee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The controversy here presents, broadly, the question as to whether the trustee of a debtor's estate is entitled to rents accruing on property owned by the debtor, or whether the mortgagees are entitled to such rents after default by the debtor where the mortgages cover the rents after default as well as the real property in Oregon.

The apartment house properties herein were all owned and mortgaged by persons or corporations prior to the date when either the debtor, or its wholly owned subsidiary acquired them. The following is a list of the mortgaged property, with the names of the holders and the dates of the mortgages:

| Property | Date of Mortgage | Mortgagee |
| --- | --- | --- |
| Nordell | March 10, 1926 | Syndicate 1 |
| Resthaven | May 16, 1926 | " |
| Chapman Court | November 10, 1926 | " |
| Duplex (1) | March 7, 1927 | " |
| Duplex (2) | March 22, 1927 | " |
| Adele Manor | March 30, 1928 | Bank 2 |
| Charmaine | July 17, 1928 | " |
| Maravilla Court | September 17, 1929 | Metropolitan 3 |

1 Its full name is Investors Syndicate, a Minnesota corporation.

2 Its full name is Portland Trust & Savings Bank, an Oregon corporation.

The mortgages held by the Syndicate each contained a provision permitting the Syndicate to take possession of the mortgaged property, on default, collect the rents and apply them on the amounts due from the mortgagor, and on foreclosure, to have a receiver appointed to collect the rents, to be applied on any amounts due the mortgagee. Separate assignments were executed by the mortgagors of the Nordell, Resthaven and Chapman Court apartments, dated June 30, 1926, June 29, 1926, and November 20, 1926, respectively. By these assignments, the mortgagors assigned to the mortgagees, the rents and income from those particular apartments "to become operative upon any default" by the mortgagors.

The mortgages held by the Bank each contained a provision, assigning the rents to the Bank "from and after default", to apply the same on any amounts due it, and upon foreclosure, to have a receiver appointed to collect the rents to be applied on any amounts due the mortgagee.

The mortgage held by the Metropolitan contained a provision giving the mortgagee the right to take possession of the mortgaged property, collect the rents, and apply the same upon any indebtedness due the mortgagee, and also provided that the mortgagee "shall have the right to the appointment of a receiver to collect the rents".

On August 2, 1933, the Bank instituted separate suits to foreclose its mortgages in a state court and sought appointment of a receiver to collect the rents. On August 10, 1933, the state court denied the applications, but entered an order in each suit requiring the debtor, during the pendency of the suit to render a verified monthly account and report "showing all rentals and other income received from said apartment house and all disbursements made on account thereof during said accounting period" and to pay into court monthly the net income.

On January 29, 1934, in the court below, an involuntary petition in bankruptcy was filed against the debtor, and on January 31, 1934, the lower court stayed all suits then pending against the debtor, until entry of an order of adjudication. On motion of

3 Its full name is Metropolitan Life Insurance Company, a New York corporation.

the debtor, filed April 25, 1934, the court below, on that day, entered an order permitting the accounting and payment required by the state court order, and permitting prosecution of the foreclosure suits, with leave to the debtor to renew its application for a stay thereof.

The debtor paid the net rentals received into the registry of the state court until the month of June, 1934, when it filed a petition in the bankruptcy court seeking reorganization under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which was superseded on July 11, 1934, by a supplemental answer to the same effect, to the involuntary petition filed. The court below, on July 11, 1934, made an order that the supplemental answer was filed in good faith, and referred the proceedings to a special master. In a hearing before the latter, appellants' attorneys appeared and announced that they intended "to appear specially" for appellants, objected to the continuance of the debtor in possession of the properties, and to the plan of reorganization.

Upon recommendations of the special master, the bankruptcy court on August 13, 1934, appointed a trustee of the debtor's estate. The trustee named did not qualify, and on September 10, 1934, a new trustee was appointed. The trustee was ordered to "keep separate accounts of all moneys coming into his possession from each of the several properties of the debtor or its said affiliate, and that the trustee's accounts shall be kept so that all income and revenues received and expense incurred in the operation of each of such properties can at all times be ascertained and segregated."

On October 22, 1934, the Syndicate filed a petition praying for leave to institute suits to foreclose the mortgages held by it, and for an order directing the trustee to pay it the net rentals, received from the properties upon which it held mortgages, as well as those which would be received. On October 24, 1934, Metropolitan filed a similar petition with respect to the mortgage held by it. On February 5, 1935, the Bank filed a petition for an order directing payment of the net rentals, received and to be received, to the state court. These petitions were referred to a special master who rendered a report on April 23, 1935, recommending that the petitions be granted.

It is not clear, in the record, what action the court took with respect to this report.

On May 21, 1935, Metropolitan filed a motion for leave to institute foreclosure proceedings. The Syndicate filed a similar motion on June 3, 1935. The Bank filed a motion on June 5, 1935, for leave to proceed with its foreclosure suits. The first two motions were granted by orders dated June 13, 1935, and June 11, 1935, respectively. The record does not disclose what action, if any, was taken on the Bank's motion. Since the permission it sought had already been granted, action on the motion was probably deemed unnecessary.

On October 9, 1935, the bankruptcy court entered an order that reorganization could not be effected, and appointed a trustee to liquidate the debtor's estate, and ordered the trustee to "keep accounts of all moneys coming into his possession from each of the several properties of the debtors, and that the Trustee's accounts shall be so kept that all income and revenues received and expenses incurred in the operation of all of said properties can at all times be ascertained and segregated". On November 20, 1935, the bankruptcy court referred to a special master the hearing and determination of the claims to rent of appellants. On that date all the foreclosure suits above mentioned were still pending.

On November 14, 1936, the special master submitted his report, from which it appears that most of the indebtedness against and value of the apartments is:

| Property | Value | Indebtedness 4 |
|---|---|---|
| Nordell | $27,500.00 | $24,807.05 |
| Resthaven | 27,500.00 | 27,102.94 |
| Chapman Court | 47,000.00 | 50,553.00 |
| Duplex (1) | 5,000.00 | 5,120.78 |
| Duplex (2) | 5,000.00 | 5,123.44 |
| Adele Manor | no finding | 48,500.00 5 |
| Charmaine | no finding | 47,000.00 5 |
| Maravilla Court | no finding | 28,153.29 |

With respect to the Nordell Apartment, the special master found: "During recent years, maintenance of the building has been neglected and the interior walls are in a bad state of repair". Regarding the Resthaven Apartment he found: "Maintenance of the building has been neglected and it is in a bad state of repair". Regarding the Chapman Court Apartment he found: "Composition shingles on the roof are

---

4 Does not include insurance paid, or cost of repairs.

5 Does not include interest due.

curled and not water tight, and the building generally is in a bad state of repair". Regarding Duplex (1) he found: "For want of repainting, the exterior walls have worn down to the wood siding, and the building is in need of repairs"; and regarding Duplex (2) he found: "Maintenance of this building, and particularly the painting of it, has been neglected". The condition of the remaining apartments was not mentioned by the special master, and he did not find whether or not waste had been committed. The parties have stipulated here there was uncontradicted evidence received by the special master that "no repairs were made except those necessary to make the rooms habitable".

The special master considered 1 Or. Code, 1930, § 5-112, which is: "A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law; provided, that nothing in this act contained shall be construed as any limitation upon the right of the owner of real property to mortgage or pledge the rents and profits thereof, nor as prohibiting the mortgagee or pledgee of such rents and profits, or any trustee under a mortgage or trust deed from entering into possession of any real property, other than farm lands or the homestead of the mortgagor or his successor in interest, for the purpose of operating the same and collecting the rents and profits thereof for application in accordance with the provisions of the mortgage or trust deed or other instrument creating the lien, nor as any limitation upon the power of a court of equity to appoint a receiver to take charge of such real property and collect such rents and profits thereof." In the foregoing statute the proviso took effect May 28, 1927. Laws of Ore.1927, Ch. 310, p. 392. The preceding part of the statute has been in effect since 1862. (Deady, § 323; Hill, § 326; Bellinger & Cotton, § 336; Lord, § 335; Olson, § 335.)

The special master concluded: (1) That although prior to the 1927 amendment, any agreement pledging the rents from the property mortgaged, as security for the mortgage debt, was void as against public policy, at the same time, it was the law that a receiver could be appointed to collect the rents, and if the mortgagee acquired possession of the mortgaged property, peaceably, he had the right to collect the rents; that the 1927 amendment did not change the law, but merely made clear what the intent was in 1862, but if it did, it was applicable to all mortgages anyway; and that therefore the mortgages were all on the same footing; (2) that "the order of this court dated September 10, 1934, directing that rentals and income from the various properties should be kept segregated, the obedience of the respective mortgagees to have those rentals kept separate for their benefit, operated as a sufficient sequestration of those rentals to preserve the rights of the mortgagees in them"; (3) that the same result would be reached by the reasoning that the trustee was required to pay the taxes on the properties as a part of the operating expenses, and that it was his "surmise" that the taxes would be as much as the rentals collected. He, therefore, recommended that the rentals in the hands of the trustee should be held by the trustee for the benefit of appellants.

Exceptions to that report were filed, and the bankruptcy court, upon hearing, held:

" * * * the proviso did not change the body of the statute which denies to a mortgagee any remedy for obtaining possession of the mortgaged premises. The mortgagor may still refuse possession, retain the rents and profits, and he will not be liable therefor * * * The law is unchanged that the mortgagor still has the right of possession, although a pledge or mortgage of the rents and profits may be enforced strictly in accordance with the statute upon equitable premises if full protection be given to intervening rights * * *

"These stipulations, therefore, under the law of Oregon, amount only to an equitable assignment of the rents and profits and as such may be applied between the original parties and their respective assignees. No right therein or lien thereon exists until the payments become due and are reduced to possession either by the mortgagee or the receiver of a court * * *

"Clearly enough, then, the mortgagees did not have any right to the rents, issues or profits under the Oregon law because they did not come into actual possession of the real property nor did they follow the specialized remedy set out in the amendment of 1927 to have the rents, issues and profits set aside for them."

The court also held that the Bank had no greater rights than the other mortgagees

because the state court did not take possession of the property through a receiver, but authorized the debtor to continue in possession.

With respect to its prior order requiring separate accounts to be kept, the court held that "it did not express any intention of giving any mortgagee an interest" in the rentals and that what the order required "was only sound bookkeeping".

Finally, with respect to the question as to whether the rents should be sequestered, the court held: " * * * The bankruptcy court should not be required to sequester rents in the hands of its trustee for the benefit of adverse parties suing the trustee in alien tribunals. The equitable assignments were inchoate * * * The courts in which they were foreclosed did not give the remedy prescribed by the statute and appoint a receiver * * * The mortgagees had no right otherwise to collect the rents and profits. Therefore, this court could not sequester the rents and profits for their benefit." Accordingly, the court on June 8, 1938, made an order that all rents from real property subject to mortgages collected prior to sale on foreclosure, be held and disbursed by the trustee in payment of expenses of administration and general claims. This order is challenged.

At all times here pertinent,[5a] § 24 of the Bankruptcy Act, 44 Stat. 664, 11 U.S.C.A. § 47, provided as follows:

"(a) The * * * circuit courts of appeal * * * are hereby invested with appellate jurisdiction of controversies arising in bankruptcy proceedings from the courts of bankruptcy from which they have appellate jurisdiction in other cases.

"(b) The several circuit courts of appeal * * * shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law * * * the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised by appeal and in the form and manner of an appeal * * * to be allowed in the discretion of the appellate court.

"(c) All appeals under this section shall be taken within thirty days after the judgment, or order, or other matter complained of, has been rendered or entered."

Being uncertain as to whether the order here complained of was appealable under § 24(a) or § 24(b), appellants applied both to the District Court and to this court for allowance of the appeal and obtained such allowance from both courts. The application to the District Court was filed on June 30, 1938. The District Court allowed the appeal on July 1, 1938. The application to this court was filed on July 2, 1938. This court allowed the appeal on July 19, 1938. Thus, it is seen, the appeal was allowed by the District Court, but not by this court, within the 30-day period specified in § 24(c).

■ Because the appeal was not allowed by this court within the 30-day period, appellees have moved to dismiss it. The motion is not well founded. The order complained of was made, not in the ordinary course of bankruptcy proceedings, but in a controversy arising in such proceedings. Compare Robert Moody & Son v. Century Savings Bank, 239 U.S. 374, 377, 34 S.Ct. 602, 58 L.Ed. 816. Hence, it was appealable under § 24(a), and the District Court was the proper court to allow the appeal. That court's allowance of the appeal was timely and sufficient. Allowance by this court was unnecessary.

■ Even if, as contended by appellees, the order complained of was appealable only under § 24(b), still the appeal was in time. Application for its allowance having been filed in this court within the 30-day period, the fact that this court's order allowing the appeal was not made until after the 30 days had expired is immaterial. The appeal was "taken", within the meaning of § 24(c), when the application was filed. In re Foster Construction Corp., 2 Cir., 49 F.2d 213, 214; In re Hoffman, 7 Cir., 82 F.2d 58, 59; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237, 239.

■ A further ground of appellees' motion is that appellants have joined in a single appeal, instead of taking three appeals, as appellees contend they should have done. We think appellees' contention is without merit. The appeal is not from three orders, but from one only. Each appellant has, it is true, a separate interest, but all have a common interest in reversing, if they can, the order appealed from. The questions presented are common to them all. It was proper, therefore, for them to join in a single appeal. Crim v. Woodford,

[5a] This appeal was taken prior to the effective date of the Chandler Act, 52 Stat. 840–940, 11 U.S.C.A. § 1 et seq.

4 Cir., 136 F. 34, 36. The motion should be denied.

Appellees' contention that the assignments of error are too vague to raise any question for review is rejected. We think the assignments are sufficient.

Appellants contend that they had a right to the rents and profits after default by the debtor, and that they also had the right to obtain them by taking action in the bankruptcy proceedings.

### Rights of Mortgagees Before 1927

■ At common law a mortgage was regarded as a conditional conveyance, by which the legal title to the estate vested in the mortgagee, who, upon execution of the mortgage, was entitled to the possession and enjoyment of the property, unless agreed to the contrary. See 19 R.C.L. §§ 86, 89.

■ The code provision made vast changes, however. In Oregon a mortgage on real estate conveys no legal or equitable title or interest in the property covered by the mortgage.[6] It merely creates a lien,[7] which constitutes security for the debt,[8] and grants to the mortgagee the right, upon default by the mortgagor, to have the property sold to satisfy the debt secured.[9] Only upon foreclosure and sale, can the mortgagor be divested of his title and possession.[10] In Teal v. Walker, 111 U.S. 242, 252, 4 S.Ct. 420, 28 L.Ed. 415, it was held that in Oregon a mortgagee is not entitled to the rents and profits of the mortgaged property, even after default, unless he obtains possession of the property, and that a stipulation in a mortgage providing that the mortgagor would surrender possession of the mortgaged property to the mortgagee upon default was void as against the public policy of Oregon as expressed in the statute above quoted. That case, by analogy, compels a like holding with respect to a stipulation regarding the fruits of possession, i. e., that upon default, the rents and profits would be

---

[6] Anderson v. Baxter, 4 Or. 105, 111; Roberts v. Sutherlin, 4 Or. 219, 223; Sellwood v. Gray & De Lashmutt, 11 Or. 534, 537, 5 P. 196; Thompson v. Marshall, 21 Or. 171, 176, 27 P. 957; Adair v. Adair, 22 Or. 115, 131, 29 P. 193; Marx v. La Rocque, 27 Or. 45, 47, 39 P. 401; Security Savings & Trust Company v. Loewenberg, 38 Or. 159, 169, 62 P. 647; Kaston v. Storey, 47 Or. 150, 152, 80 P. 217, 114 Am.St.Rep. 912; Coles v. Meskimen, 48 Or. 54, 56, 85 P. 67; Noble v. Watkins, 48 Or. 518, 520, 87 P. 771; Kinney v. Smith, 58 Or. 158, 161, 113 P. 854; Bailey v. Frazier, 62 Or. 142, 148, 124 P. 643; Higgs v. McDuffie, 81 Or. 256, 265, 157 P. 794, 158 P. 953; Caro v. Wollenberg, 83 Or. 311, 316, 163 P. 94; Purdy v. Underwood, 87 Or. 56, 64, 169 P. 536; Aya v. Morson, 90 Or. 647, 658, 178 P. 207; Schleef v. Purdy et al., 107 Or. 71, 78, 214 P. 137; Stout v. Van Zante, 109 Or. 430, 439, 219 P. 804, 220 P. 414; McLennan v. Holbrook, 143 Or. 458, 461, 23 P.2d 137; Libel v. Pierce, 147 Or. 132, 136, 31 P. 2d 1106; Callan v. Western Inv. & Holding Co., 157 Or. 412, 425, 72 P.2d 48.

[7] Sellwood v. Gray & De Lashmutt, 11 Or. 534, 537, 5 P. 196; Thompson v. Marshall, 21 Or. 171, 176, 27 P. 957; Marx v. La Rocque, 27 Or. 45, 47, 39 P. 401; Dekum v. Multnomah County, 38 Or. 253, 256, 63 P. 496; Kaston v. Storey, 47 Or. 150, 152, 80 P. 217, 114 Am. St.Rep. 912; Coles v. Meskimen, 48 Or. 54, 56, 85 P. 67; Noble v. Watkins, 48 Or. 518, 520, 87 P. 771; Kinney v. Smith, 58 Or. 158, 161, 113 P. 854; Bailey v. Frazier, 62 Or. 142, 148, 124 P. 643; Higgs v. McDuffie, 81 Or. 256, 265, 157 P. 794, 158 P. 953; Schleef v. Purdy et al., 107 Or. 71, 75, 214 P. 137; Stout v. Van Zante, 109 Or. 430, 439, 219 P. 804, 220 P. 414; Libel v. Pierce, 147 Or. 132, 136, 31 P.2d 1106; Callan v. Western Inv. & Holding Co., 157 Or. 412, 425, 72 P.2d 48.

[8] Roberts v. Sutherlin, 4 Or. 219, 223; Sellwood v. Gray & De Lashmutt, 11 Or. 534, 537, 5 P. 196; Watson v. Dundee Mortg. & T. I. Co., 12 Or. 474, 480, 8 P. 548; Adair v. Adair, 22 Or. 115, 131, 29 P. 193; Security Savings & Trust Company v. Loewenberg, 38 Or. 159, 169, 62 P. 647; Schleef v. Purdy et al., 107 Or. 71, 75, 214 P. 137; Stout v. Van Zante, 109 Or. 430, 439, 219 P. 804, 220 P. 414.

[9] Anderson v. Baxter, 4 Or. 105; Schleef v. Purdy et al., 107 Or. 71, 78, 214 P. 137.

[10] Roberts v. Sutherlin, 4 Or. 219, 223; Sellwood v. Gray & De Lashmutt, 11 Or. 534, 537, 5 P. 196; Cooke v. Cooper, 18 Or. 142, 148, 22 P. 945, 7 L.R.A. 273, 17 Am.St.Rep. 709; Kaston v. Storey, 47 Or. 150, 152, 80 P. 217, 114 Am.St.Rep. 912; Lambert v. Howard, 49 Or. 342, 345, 90 P. 150; Kinney v. Smith, 58 Or. 158, 161, 113 P. 854; Bailey v. Frazier, 62 Or. 142, 148, 124 P. 643; Schleef v. Purdy et al., 107 Or. 71, 78, 214 P. 137; State ex rel. Nayberger v. McDonald et al., 128 Or. 684, 695, 274 P. 1104.

applied on the debt secured by the mortgage.

Of course, a mortgagor may voluntarily relinquish possession of the mortgaged property to the mortgagee, and if he does, the mortgagee is entitled to retain possession as against the mortgagor, and those claiming under him, until the debt is paid,[11] and "may bring an action of trespass as though the title were vested in him unconditionally". Johnson v. Pacific Land Co., 84 Or. 356, 358, 164 P. 564, 565. A mortgagee in possession must account for, and apply, the rents and profits on the debt secured;[12] is entitled to reimbursement for keeping the property in repair,[13] but "cannot collect pay for services rendered for himself" in attending the mortgaged property,[14] or obtain "reimbursement for permanent improvements which he installs."[15]

With respect to appointment of a receiver in a mortgage foreclosure suit, in Couper v. Shirley, 9 Cir., 75 F. 168, 170, it was held that a mortgagor and mortgagee have no power to bind the courts by a stipulation for the appointment of a receiver to collect and apply on the debt secured by the mortgage, the rents and profits, and that a court had no authority to appoint a receiver pursuant to such a stipulation "independent of any equitable condition which might be shown to exist". The Supreme Court of Oregon has never passed on that precise point. Although it was intimated in Caro v. Wollenberg, 68 Or. 420, 428, 136 P. 866, that a contrary rule existed, in State ex rel. Nayberger v. McDonald et al., 128 Or. 684, 695, 274 P. 1104, the case of Couper v. Shirley, supra, was cited.

The general law regarding appointment of a receiver is not at all clear. 2 Ore. Code Ann., 1930, § 32-702 provides:

"A receiver may be appointed by the court in the following cases:

"1. Provisionally, before judgment or decree, on the application of either party, when his right to the property, which is the subject of the action, suit or proceeding, and which is in the possession of an adverse party, is probable, and the property or its rents or profits are in danger of being lost or materially injured or impaired. * * *"

It is extremely doubtful that such provision authorized appointment of a receiver on behalf of a mortgagee pending foreclosure, because it required three things: (1) A probable "right to the property"; (2) possession of such property in the adverse party; and (3) danger that the property or its rents and profits would be lost or materially injured or impaired. As seen, the mortgagee had no right to the mortgaged property, but only a right to have it sold. See also: State ex rel. Nayberger v. McDonald et al., 128 Or. 684, 696, 274 P. 1104 as explained in McKinney v. Nayberger et al., 138 Or. 203, 219, 295 P. 474, 2 P.2d 1111, 6 P.2d 228, 229.

However, Brayton & Lawbaugh v. Monarch Lumber Co., 87 Or. 365, 389, 169 P. 528, 536, 170 P. 717, indicates that the court had power to appoint receivers in cases other than those prescribed in the statute mentioned. It is there said: "* * * it may be conceded that the general rule is that a mortgagee rightfully in possession of mortgaged property cannot be ousted by the appointment of a receiver at the instance of the mortgagor or one claiming under the mortgagor without first paying or tendering the amount due on the mortgage debt; but this rule like most general rules has its exceptions. If the mortgagee is committing waste and is insolvent, equitable relief may be necessary. * * *" If a *mortgagee,* rightfully in possession, may not be ousted by the appointment of a receiver, except in certain cases, then it would seem as logical to say that a *mortgagor,* rightfully in possession, may not be ousted, except in the same cases. We think this is an expression that a receiver might be appointed in either case. See also: Kountze v. Omaha Hotel Co., 107 U.S. 378, 395, 2 S.Ct. 911, 27 L.Ed. 609; Grant v. Phoenix Mut. Life Ins. Co., 121 U.S. 105, 117, 7 S.Ct. 841, 30 L.Ed. 905; Gordon v. Washington, 295

[11] Roberts v. Sutherlin, 4 Or. 219, 223; Cooke v. Cooper, 18 Or. 142, 148, 22 P. 945, 7 L.R.A. 273, 17 Am.St.Rep. 709; Coles v. Meskimen, 48 Or. 54, 56, 85 P. 67; Lambert v. Howard, 49 Or. 342, 345, 90 P. 150; Caro v. Wollenberg, 68 Or. 420, 428, 136 P. 866.

[12] Renshaw v. Taylor, 7 Or. 315, 326; Berns et al. v. Berns et al., 125 Or. 682, 687, 267 P. 1033.

[13] Caro v. Wollenberg, 83 Or. 311, 318, 163 P. 94.

[14] Caro v. Wollenberg, 83 Or. 311, 316, 163 P. 94, 96.

[15] Caro v. Wollenberg, 83 Or. 311, 318, 163 P. 94, 97; Hawkins v. Rodgers, 91 Or. 483, 500, 179 P. 563, 569, 905.

U.S. 30, 37, 55 S.Ct. 584, 79 L.Ed. 1282; annotations: 26 A.L.R. 38, 41; 36 A.L.R. 609; 55 A.L.R. 533; 87 A.L.R. 1008; 111 A.L.R. 730.

The courts are not in harmony as to the sufficiency of the grounds for the appointment of a receiver. One rule seems to be that a receiver will be appointed where the security is inadequate. 26 A.L.R. 49. Another is that there must be not only inadequacy of the security but also insolvency of the mortgagor. 26 A.L.R. 50. Still another is that there must be not only inadequacy of the security and insolvency of the mortgagor but also waste or danger of loss or destruction of the property. 26 A.L.R. 55. The latter rule is the one which we think to be the rule in Oregon as a necessary conclusion of the language in Brayton & Lawbaugh v. Monarch Lumber Co., supra. See, also, Kountze v. Omaha Hotel Co., supra, 107 U.S. at page 395, 2 S.Ct. 911, 27 L.Ed. 609; Grant v. Phœnix Mut. Life Ins. Co., 121 U.S. 105, 117, 7 S.Ct. 841, 30 L.Ed. 905.

From the foregoing it can be seen that a mortgagee did not acquire the right of possession of the mortgaged premises, or the right to the rents and profits therefrom, even though stipulations therefor upon default were contained in the mortgage; and that a receiver could not lawfully be appointed in a mortgage foreclosure suit unless the equitable grounds mentioned above existed, even though the mortgagor and mortgagee stipulated in the mortgage, that a receiver might be appointed upon default.

### Effect of the 1927 Amendment

What has been said refers to the law under the statute as it existed before amendment. Such statute will be hereafter called the code provision, and the part added in 1927 will be called the amendment.

The amendment provided that the code provision should not "be construed as any limitation upon the right of the owner of real property to mortgage or pledge the rents and profits thereof". It does not say that if such a mortgage were made, the mortgagee could enforce the same, or specify how it could be enforced. Should those rights be implied? It is clear that such provision permitted the mortgagee to obtain a mortgage or pledge of the rents and profits of the mortgaged property (excepting, possibly, farm lands and homesteads—a question we do not decide).

The illegality of such a provision being removed, what is the effect of a stipulation in a mortgage pledging or assigning the rents and profits? It is generally held that such a stipulation does not of itself transfer the rents and profits, but merely creates a lien which becomes effective only when the mortgagee either obtains possession, or has a receiver appointed to collect the rents. American Bridge Co. v. Heidelbach, 94 U.S. 798, 800, 24 L.Ed. 144; Teal v. Walker, supra, 111 U.S. at page 248, 4 S.Ct. 420, 28 L.Ed. 415; Freedman's Saving & Trust Co. v. Shepherd, 127 U.S. 494, 502, 8 S.Ct. 1250, 32 L.Ed. 163; 41 C.J. 628, § 605. We are required to apply the law of Oregon. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290. In the absence of a decision by the Supreme Court of Oregon settling the meaning of the amendment, we think the law in Oregon is as stated above.

Since the mortgage or pledge of the rents and profits did not enable the mortgagee to obtain them, the second and third provisions of the amendment sought to enable the mortgagee to obtain them. The second provision of the amendment provided that the code provision should not be construed "as prohibiting the mortgagee * * * from entering into possession of any real property, other than farm lands or the homestead of the mortgagor * * * for the purpose of operating the same and collecting the rents and profits thereof for application in accordance with the provisions of the mortgage * * *." Thus, with respect to real property other than farm lands and homesteads, the mortgagee is no longer prohibited from taking possession of the mortgaged property. If a mortgagor stipulated in the mortgage that the mortgagee might have possession of the mortgaged property upon default, the amendment permitted the agreement to be carried into effect, regardless of the code provision. It was apparently implied that a mortgagee might obtain possession of the property as against the occupant by the ordinary possessory remedy conferred on one having the right to possession.

In the event that upon default a mortgagee elected to foreclose without obtaining

possession, then the third provision of the amendment created an alternative remedy to obtain the rents and profits, by appointment of a receiver, which accomplished the same purpose. Apparently, the only requirement for appointment of a receiver, is that "such" rents and profits must be mortgaged or pledged. If they are not, then the only power to appoint a receiver is that existing on the equitable grounds mentioned above.

 We hold that with respect to real property other than farm lands and homesteads, the code provision was so modified by the amendment that the owner of real property other than farm lands and homesteads may lawfully mortgage or pledge the rents and profits of his real property; that a mortgagor of real property other than farm lands and homesteads may lawfully stipulate in the mortgage that the mortgagee is entitled to possession upon default by the mortgagor, and if he does, the mortgagee may recover possession by an appropriate remedy; that if a mortgagor mortgages or pledges the rents and profits of real property, other than farm lands and homesteads, a court may appoint a receiver to collect them, by virtue of that fact alone, in a foreclosure suit; and in all other respects the code provision is still effective.

### Application of the 1927 Amendment

 Since the mortgages to the Bank and the Metropolitan were all executed after the effective date of the amendment, it is of course applicable to them. The mortgages executed to the Syndicate were all executed prior to the effective date of the amendment.

It is contended that the amendment is applicable to the Syndicate mortgages, because it merely clarified the code provision. We think the amendment deliberately changed the law. It is further contended that the amendment related only to remedy or procedure, but we think it dealt with substantive rights. The Syndicate, by the mortgages, obtained no rights to the possession of the mortgaged property, or to the rents and profits therefrom, because the stipulations in that respect were invalid when made. The statute indicates no intention of validating such stipulations previously made. Giving the amendment prospective effect, as we should (Libby v. Southern Pacific Co., 109 Or. 449, 452, 219 P. 604, 220 P. 1017), it is applicable only

to mortgages subsequently executed. The provision regarding appointment of a receiver is effective only if there is a mortgage or pledge of the rents and profits, which are absent in the Syndicate mortgages because the stipulations intended for that purpose were invalid.

### Effect of the Bankruptcy Proceedings

 Regarding the conflict between state and federal courts, the rule has been stated to be: "when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property". Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 737, 51 S.Ct. 270, 272, 75 L.Ed. 645. Accordingly, where a mortgagee sues in the state court to foreclose its mortgage, and that court takes possession of the mortgaged property, the subsequent bankruptcy does not deprive the state court of jurisdiction to proceed. Isaacs v. Hobbs Tie & Timber Co., supra. On the other hand, if bankruptcy proceedings are commenced prior to the foreclosure suit, then the bankruptcy court has custody of the property, through the trustee who has actual or constructive possession (Isaacs v. Hobbs Tie & Timber Co., supra, 737), and the mortgagee may not proceed to foreclosure in a state court without consent of the bankruptcy court. Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060; Ex parte Baldwin, 291 U.S. 610, 615, 54 S.Ct. 551, 78 L.Ed. 1020.

 As can be seen from the above, the intervention of the bankruptcy removed the right of the mortgagees to obtain possession of the mortgaged property, or to foreclose and obtain the appointment of a receiver whereby they could obtain the rents, without the consent of the bankruptcy court. In the event that the bankruptcy court did not consent to foreclosure, the question immediately arises as to whether the mortgagees are deprived of any remedy to obtain the rents. While there is ground for holding in the affirmative, in that in general, one purpose of the bankruptcy act is to abolish or restrict remedies, this court has held that where the bankruptcy court grants a petition of the

**622**

mortgagee to sequester rents and profits, the mortgagee. is entitled to such rents from the date of the filing of the petition, which necessarily implies that the bankruptcy court has power to make such an order. American Trust Co. v. England, 9 Cir., 84 F.2d 352. Compare: In re Hotel St. James Co., 9 Cir., 65 F.2d 82; Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 222, 56 S.Ct. 412, 80 L.Ed. 591.

 The present controversy, however, does not concern the power to do so, but the propriety of its exercise. Upon what circumstances should the bankruptcy court order a sequestration of the rents? Without attempting to mark the limits, we say that such power ought not to be exercised in cases where the mortgagee would have greater rights in bankruptcy than he would have, had bankruptcy not intervened. Whether there are or should be other limits on the exercise of the power, it is unnecessary here to determine because appellees assume that if the mortgagees have a right to the rents and profits the bankruptcy court should enforce such right.

■ Insofar as the Syndicate is concerned, its application to sequester the rents and profits was properly denied, otherwise it would be placed in a better position by the intervening bankruptcy, than it was before.

■ With respect to the Metropolitan's mortgage, it is contended that its petition was properly denied because of 11 U.S.C.A. § 107(a) which provides: "Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." We think that such statute does not prevent sequestration of the rents, because had Metropolitan brought an action to recover possession, or to foreclose its mortgage, it would have been entitled to the rents from that time as against the debtor's creditors. Its petition for sequestration accomplished the same result.

■ With respect to the Bank's mortgages the suits brought by it in the state court, followed by the order directing the debtor to pay the net rentals into the registry of the court, brought the res into the custody of the state court. The debtor, we think, was acting as the state court's agent, so that the state court had possession through such agent. Compare: Hitz v.

Jenks, 123 U.S. 297, 306, 8 S.Ct. 143, 31 L.Ed. 156; Straton v. New, supra; In re Berdick, D.C., 56 F.2d 288, 289, cited with approval in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 222, 56 S.Ct. 412, 80 L.Ed. 591. Therefore, the filing of the involuntary petition in bankruptcy did not disturb the state court's control over the res in its possession.

■ The Bank's petition specifically set forth the facts showing that the res was in the possession of the state court. Upon that showing, the court below should have granted the Bank's petition and ordered the trustee to deliver such rentals to the state court in compliance with its order.

Whether different results would obtain under these facts if the court below had not ordered liquidation of the debtor's estate, we have no occasion to determine.

The order of the court below should be modified, so as to direct payment of all the net rentals, received by the trustee from the properties mortgaged to the Bank, into the registry of the state court, and so as to direct the trustee to retain and apply on the deficiency, if any, upon the sale of the property mortgaged to Metropolitan, the rentals received by him after October 24, 1934 from such property, and as so modified, the order is

Affirmed.