[Nos. 47299–8, 47488–5.   En Banc.   December 10, 1981.]

JERRY B. OVERTON, ET AL, *Respondents,* v. THE
ECONOMIC ASSISTANCE AUTHORITY,
*Appellant.*

SPECTRUM GLASS COMPANY, INC., *Respondent,* v.
THE ECONOMIC ASSISTANCE AUTHORITY,
*Appellant.*

Kenneth O. Eikenberry, Attorney General, and *Thomas W. Hayton* and *Leland T. Johnson, Assistants,* for appellant.

*Layman, Mullin & Etter,* by *R. Max Etter, Jr.,* for respondents Overton, et al.

*Culp, Dwyer, Guterson & Grader,* by *Barry E. Wolf,* for respondent Spectrum Glass Co.

HICKS, J.—The Economic Assistance Authority (EAA) denied tax deferral benefits to two businesses which EAA determined were not eligible under the Economic Assistance Act of 1972, RCW 43.31A, for deferral of sales and use taxes payable on construction projects. The decision of the EAA in both cases was overturned by the Superior Court. The cases have been consolidated for direct review by this court.

The general issue presented by both cases is whether a manufacturing firm that doesn't build its own factory but leases from a third party that actually built, paid for, and owns the factory, is eligible under RCW 43.31A for deferral of sales and use taxes. In both cases we affirm the administrative agency, and reverse the Superior Court.

The facts are as follows. During the so-called Boeing recession of the early 1970's, the legislature passed the Economic Assistance Act of 1972, RCW 43.31A, allowing for deferral of sales and use taxes on construction projects "undertaken" by a manufacturing firm. The relevant statutes as written at the time these cases arose are as follows:

RCW 43.31A.140:

> *The authority shall certify the eligibility of investment projects,* and the department of revenue shall grant investment tax deferrals for eligible investment projects in an amount not to exceed the state and local sales tax

payable under chapters 82.08 and 82.14 RCW or the use tax payable under chapters 82.12 and 82.14 RCW on machinery, materials, labor, and services directly utilized *in a certified eligible investment project undertaken by a firm engaged in or to be engaged in manufacturing.*

RCW 43.31A.160:

The department of revenue shall conduct an audit of the project upon its completion in order to determine the total amount of tax deferral. Any tax found due on non-qualifying construction or purchases shall be immediately assessed and payable. *The manufacturing firm will begin paying* the deferred taxes three years after the date certified by the authority as the date on which the construction project has been operationally completed.

RCW 43.31A.170:

The department of revenue may authorize an accelerated repayment schedule *upon request of the manufacturing firm.*

(Italics ours.)

Both businesses, Spectrum Glass and Spokane Transformer Company attempted to qualify for the above tax deferral on the construction of new factories. Both were denied because the financing and ownership of the factory was through third persons and the businesses applying for the deferrals were simply lessees. In the case of Spokane Transformer, the third person owner of the new factory was Jerry B. Overton, the sole owner of Spokane Transformer Company. In the case of Spectrum Glass, the new factory was financed and built by a third party owner, but Spectrum Glass, the manufacturer/lessee, oversaw the actual construction and by contract agreed to pay the sales and use taxes that would otherwise fall to the owner.

The EAA took the view that the contractual arrangement was done only so that Spectrum Glass could qualify for the deferral. The agency's determination was that the intent of the legislature was not to allow the tax deferral on construction projects not "undertaken" (paid for) by the manufacturing firm itself.

■■ Where an administrative agency is charged with administering a special field of law and endowed with quasi–judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review. *Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 552 P.2d 674 (1976); *Short v. Clallam County*, 22 Wn. App. 825, 593 P.2d 821 (1979). We also recognize the countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law. *Rusan's, Inc. v. State*, 78 Wn.2d 601, 478 P.2d 724 (1970). As stated in both *In re Juvenile Director*, 87 Wn.2d 232, 552 P.2d 163 (1976) and *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978), both history and uncontradicted authority make clear that it is emphatically the province and duty of the judicial branch to say what the law is.

■ In making the determination in this case, we accord the agency's interpretation of the terms and intent of RCW 43.31A substantial weight, and agree with the agency's view that a business–lessee does not qualify for the tax deferral.

Although there is merit to the arguments advanced by the business–lessees that the same advantage to the state's economy and stimulus to the job market is afforded whether they are lessees or owners, it seems clear that the EAA is applying the statute as the legislature intended. As stated by the assistant attorney general in his brief on behalf of appellant EAA in the Spectrum Glass case:

> In the final analysis, therefore, Spectrum's problem lies with the legislature rather than with the administrative agency. As a policy argument there is considerable merit in the conclusion that the stated statutory purpose of the Economic Assistance Act found in RCW 43.31A.010 would be better served if the legislature had made specific provision for the conferral of the tax deferral benefits upon manufacturing lessees as it indeed has done in

the past.[1]

. . .

In the case of this very real example and in the situation before this court neither the Authority as an administrative agency nor the court is permitted to read into the statute what the legislature has failed to provide, however unintentional may have been the omission. *Department of Labor & Industries v. Cook,* 44 Wn.2d 671, 269 P.2d 962 (1954).

The appropriate standard of review of the decision of an administrative agency is set out in RCW 34.04.130(6). The Superior Court was correct in reversing the EAA's decision only if it was *clearly erroneous, arbitrary and capricious,* or a result of *error of law.* We do not find any of those standards to be met in this case.

At the time of the EAA's decision the statutory language was as set out previously. The emphasized language makes clear the expectation that the manufacturing firm will pay the deferred taxes, and that by request of the manufacturing firm the accelerated repayment schedule can be instituted. Thus, the entire context of the statute at the time of the EAA's decision in both of these cases dictated the result the EAA reached in viewing the term "undertaken" to mean "paid for".

This view comports with the rule of construction applied by this court that exemptions in the nature of tax credits will be narrowly construed in favor of the application of the tax. *Evergreen–Washelli Memorial Park Co. v. Department of Revenue,* 89 Wn.2d 660, 574 P.2d 735 (1978). A deferral of the tax subsequently payable without interest is in the nature of a partial exemption.

That this construction of the statute comports with the legislature's intent is clear not only from the terms of the statute as written at that time, but from the statute as clarified by the 1981 legislature. The pertinent statute,

---

[1] In RCW 82.04.435, the 1965 legislature gave the B & O tax credit to the lessee, without regard to who incurred the direct investment expense. They could have written the statute before us in the same manner, but did not.

RCW 43.31A.140, now reads as follows:

> The authority shall certify the eligibility of investment projects, and the department of revenue shall grant investment tax deferrals for eligible investment projects in an amount not to exceed the state and local sales tax payable under chapters 82.08 and 82.14 RCW or the use tax payable under chapters 82.12 and 82.14 RCW on machinery, materials, labor, and services . . . *paid for* by a firm engaged in or to be engaged in manufacturing: *Provided,* That after March 1, 1981, no taxpayer may be certified by the authority as eligible for tax deferral for any investment project costs over thirty million dollars, cumulative on all outstanding and subsequent projects: *Provided further,* That taxpayer applications certified by the authority as eligible for tax deferral after March 1, 1981 and before the effective date of this 1981 act shall be null and void and of no force and effect.

(Underscoring omitted. Italics ours.) Laws of 1981, ch. 76, § 2, p. 331.

 The term "undertaken", which Spectrum and Spokane Transformer argue is broad enough to include them though they did not pay for, and do not own, the new factories, has been changed to read "paid for". We do not view this as a substantive change in the meaning or intent of the statute. *Cf. In re Estate of Phillips,* 193 Wash. 194, 74 P.2d 1015 (1938). Although amendment of an unambiguous statute usually indicates a material change of law (*Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978)), this amendment we view as a clarification of the legislature's original intent, which was ambiguously expressed in the original enactment by the term "undertaken".

Counsel for EAA informs this court that the issue of who is entitled to the deferral and when has been a subject of dispute not only in the two cases before us but in others. Quoting from 1A C. Sands, *Statutory Construction* § 22.31 (4th ed. 1972):

> Defects in original act.
>  . . . The court will determine what defects existed in the original act, which defect the legislature intended to cure, and then construe the amendment so as to reduce

or eliminate the defect intended to be remedied.

In the past we have held that separation of powers problems are raised when a subsequent legislative enactment is viewed as a clarification and applied retroactively, if the subsequent enactment contravenes the construction placed on the original statute by this court. *Johnson v. Morris,* 87 Wn.2d 922, 557 P.2d 1299 (1976). But where this court has not previously interpreted the statute to mean something different and where the original enactment was ambiguous such to generate dispute as to what the legislature intended, the subsequent amendment shall be effective from the date of the original act, even in the absence of a provision for retroactivity. *Carpenter v. Butler,* 32 Wn.2d 371, 201 P.2d 704 (1949); *Johnson v. Morris, supra.*

Thus, the EAA's application of the economic assistance act since its beginning in 1972 has been correct. Additionally, it should be noted that as of June 1982, the deferrals will not be available to *any* businesses, as the EAA is abolished as of that date.

In each case, the agency's decision is affirmed and the Superior Court reversed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.