**In re ASSOCIATION CENTER LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 88–00025.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

May 17, 1988.

Edwin K. Sato, Shulkin, Hutton & Bucknell, Inc., P.S., Seattle, Wash., for debtor.

Thomas L. Palotas, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Seattle, Wash., for Traveler's.

Peter LeSourd, The Siqueland Partnership, Seattle, Wash., for Santys.

## OPINION ON MOTION TO PAY OVER RENTS OR, IN THE ALTERNATIVE, FOR A CASH COLLATERAL ORDER TO SEQUESTER RENTS

SAMUEL J. STEINER, Chief Judge.

### FACTS

This matter is before the Court on the motion of The Traveler's Insurance Company ("Traveler's") to pay over or to sequester rents, and on the cross-motion of the debtor for authority to use cash collateral.

The relevant facts show that the debtor's only asset is a four-story office building located in Seattle which is commonly known as the Association Center Office Building. In January of 1980, a prior owner, the Dexter Group, borrowed $1,100,000 from Traveler's. The loan was evidenced by a promissory note which was secured by a deed of trust on the building. The deed of trust contained an assignment of rents clause which reads as follows:

> As further security for the payment of all indebtedness herein mentioned, all Grantor's rents and profits of said property and the right, title and interest of the Grantor entered under all leases now or hereafter affecting said property are hereby assigned and transferred to the Beneficiary. So long as no default shall exist ... the Grantor may collect assigned rents and profits as the same fall due, but upon the occurrence of any default ... all right of the Grantor to collect or receive rents or profits shall wholly terminate. All rents or profits of Grantor receivable from or in respect to said property which it shall be permitted to collect hereunder shall be received in trust to pay the usual reasonable operating expenses of, and the taxes upon, said property and the sums owing the Beneficiary as they become due and payable ...

In addition to, and as part of, the transaction, a document entitled "Assignment of Leases for Security Purposes Only in Event of Default", was executed which granted Traveler's an "absolute assignment" of the buildings leases with tenants and which further gave the borrower a "license" to collect rents so long as the obligation was not in default.

After the acquisition of the property, the Dexter Group transferred it to Donald L. and Nancy C. Santy, who thereafter transferred it to the debtor. Both the Santys and the debtor assumed the debt to Traveler's.

The debtor's financial problems began in December of 1986, when a tenant who occupied a full floor vacated, resulting in a thirty-three percent vacancy rate. Cash flow deficits of approximately $5,000 per month followed, and by mid–1987 the debtor's cash reserves were exhausted.

The note to Traveler's requires monthly payments of approximately $10,580. No payments have been made since July 1987. The current principal balance is in excess of $1,036,000; interest is accruing at a default rate of fifteen percent per annum; and the debtor has failed to pay the 1986 and 1987 real property taxes.

On October 29, 1987, Traveler's filed suit in State Court on the note and sought to foreclose its deed of trust. On December 8, 1987, the Court issued an order for the debtor to show cause as to why a receiver should not be appointed to manage the building and collect the rent. The hearing was scheduled to be heard January 4, 1988. While the hearing was in progress, this Chapter 11 case was filed, thereby invoking the automatic stay of Section 362(a) of the Code. 11 U.S.C. § 362(a).

**144**

Does Traveler's documentation (assignment of rents clause in the deed of trust and Assignment of Leases) create a perfected security interest in the rents, entitling Traveler's to collect the post-filing rents?

## DISCUSSION

█ Any determination in a bankruptcy proceeding regarding the validity and extent of a mortgagee's security interest in the rents and profits of mortgaged property should be resolved by reference to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In this case, the applicable statute is R.C.W. 7.28.-230 which provides:

(1) A mortgage of any interest in real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law: PROVIDED, that nothing in this section shall be construed as any limitation upon the right of the owner of real property to mortgage, pledge or assign the rents and profits, or any trustee under a mortgage or trust deed either contemporaneously or upon the happening of a future event of default, from entering into possession of any real property, other than farm lands or the homestead of the mortgagor or his successor in interest, for the purpose of collecting the rents and profits hereof for application in accordance with the provisions of the mortgage or trust deed or other instrument creating the lien, nor as any limitation upon the power of a court of equity to appoint a receiver to take charge of such real property and collect such rents and profits thereof for application in accordance with the terms of such mortgage, trust deed or assignment.

Although R.C.W. 7.28.230 was substantively amended in 1969, there are only two reported decisions which interpret the statute as amended. The first, *In re Federal Shopping Way, Inc.*, 457 F.2d 176 (9th Cir.1972), held that the 1969 amendments did not have retroactive effect. The second, *In re Johnson*, 62 B.R. 24 (9th Cir.BAP 1986), provides some guidance and will be discussed in further detail below.

Traveler's has asked the Court to determine that it has a valid and perfected assignment of rents. Such a determination would permit Traveler's to collect the rents and would transform them into cash collateral pursuant to § 363 of the Code. 11 U.S.C. § 363. In support, Traveler's argues that it holds an absolute or perfected assignment of rents and is entitled to collect them without taking any additional steps. Traveler's contends that pursuant to the documentation of the loan, the debtor merely has a license to collect rents, and that the license was revoked on default.

On the other hand, the debtor argues that Traveler's has nothing more than an inchoate lien on the rents which can only be perfected under State law by the mortgagee (Traveler's) taking possession of the building or by the appointment of a receiver. The debtor further contends that as a result, Traveler's does not have a perfected interest in the rents, and therefore the rents are not cash collateral.

If it is determined that Traveler's has an absolute assignment, the ruling will be dispositive of the issue of entitlement to rents. If, however, the Court concludes that Traveler's only has an inchoate lien, a secondary issue must then be resolved, that is what steps, if any, may be taken to perfect the lien after filing?

In the Ninth Circuit, there are two cases which hold an assignment of rents to be absolute, and one which holds that an assignment of rents creates only an inchoate lien. In *In re Ventura–Louise Properties*, 490 F.2d 1141 (9th Cir.1974), the Court held that under California law, where the lender had the right to collect rents upon default, the assignment was absolute and no further action was required by the creditor. Under California law, parties to a mortgage may contract as to the right to rents and any such contract is to be enforced according to the intentions of the parties. *Kinnison v. Guaranty Liquidating Corp.*, 18 Cal.2d 256, 115 P.2d 450 (1941). Similar-

ly in *In re Matter of Stapp,* 641 F.2d 737 (9th Cir.1981), this time interpreting Nevada law, the Ninth Circuit came to the same conclusion. A primary factor in both decisions was the use of the term "assignment" without the qualifying language "as additional security". *In re Stapp, supra,* at 739. The reliance on the precise wording was pertinent in those cases as under both California and Nevada law, the test as to whether the assignment was absolute was the intent of the parties to make the assignment absolute or to make it for additional security. *In re Ventura–Louise Properties, supra,* at 1144; *In re Stapp, supra,* at 739. A third Ninth Circuit decision, however, reaches the opposite conclusion. In construing an Oregon statute, which is substantially the same as that of Washington, the Court held in *Investors Syndicate v. Smith,* 105 F.2d 611 (9th Cir. 1939), that pursuant to the Oregon statute which permitted a mortgagee to obtain a mortgage which contained a pledge of rents and profits, a stipulation pledging or assigning rents and profits did not, of itself, transfer the rents and profits, but merely created a lien which became effective only when the mortgagee obtained actual possession, or had a receiver appointed to collect rents.

The Washington statute was the subject of a Ninth Circuit Bankruptcy Appellate Panel decision, *In re Johnson, supra.* In *Johnson,* the bankruptcy court awarded a portion of certain rents and profits to a deed of trust holder from the date of entry of an order granting relief from stay through the date of foreclosure. Relying on the *Investors Syndicate, supra,* case, the B.A.P. held that the creditor had only an inchoate lien against the rents and was not entitled to any portion of them.

> "While we recognize that Northwest perfected its security interest in the normal sense through recordation of the deed of trust, we nonetheless conclude that Northwest had only an inchoate lien as to the rents at issue."

■ Based upon the cases of *Investors Syndicate v. Smith, supra,* and *In re Johnson, supra,* this Court concludes that Traveler's has nothing more than an inchoate lien against the rents, despite the sophisticated drafting of the assignment of rents in terms of a license. A rose by any other name is still a rose. The factor which was so vital to the decisions in the *Ventura–Louise Properties* and *In re Stapp* cases is not present in this case. In the Traveler's Deed of Trust, paragraph 22 begins "As further security for the payment ..." the rents and profits are assigned. The other document relied upon by Traveler's is the "Assignment of Leases *for Security Purposes Only* in Event of Default" [emphasis added]. Obviously, the semantic differences which were the basis for the *Ventura–Louise* and *Stapp* decisions are not present in this case.

Having concluded that Traveler's has nothing more than an inchoate lien, the Court is then faced with the question of whether there is any method by which Traveler's can perfect its inchoate lien after a bankruptcy is filed.

Initially, it should be noted that Section 362(a)(5) of the Code, 11 U.S.C. § 362(a)(5), stays an act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secured a claim that arose before the commencement of the bankruptcy case; and Traveler's has not preceded its motion to sequester for one for relief from the stay.

*In re Gelwicks,* 81 B.R. 445 (Bankr.N.D. Ill.1987), addressed the issue of perfection under § 546(b) of the Bankruptcy Code. Under Illinois law as in Washington, a mortgagee can perfect its security interest in rents by obtaining actual possession or appointment of a receiver. The secured creditor then asserted that it could perfect its interest, post-petition, by giving proper notice under § 546(b). That section provides:

> (b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure

of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b).

■ The *Gelwicks* court concluded that the vast majority of the courts which have addressed the question of whether § 546(b) could be used to perfect an interest in rents, post-petition, had answered affirmatively.[1] The court held that a mortgagee could perfect its security interest in rents, post-petition, by giving proper notice. According to *Gelwicks*, a notice would be sufficient if it informed the court or the possessor of the property that the creditor intends to enforce his lien in the rents.

This court respectfully disagrees with *Gelwicks* and the "vast majority" of the cases and concludes that § 546(b) may not be used to perfect a security interest in rents. The cases which have allowed § 546(b) perfection have misconstrued the purpose behind the statute. The problem was specifically addressed by another Judge of this Court in *In re Electric City, Inc.*, 43 B.R. 336 (Bankr.W.D.Wash.1984), wherein a county was attempting to perfect a lien for personal property taxes by arguing perfection under § 546(b). The Court reviewed the pertinent legislative history of § 546(b) which states:

> The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before commencement of the case ... The purpose of the subsection is to protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom state law protects by allowing them to perfect their liens or inter-

ests as of an effective date that is earlier than the date of perfection.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The Court concluded that post-petition perfection, pursuant to § 546(b), was available only where the particular statute authorized relation back.

The recently decided case of *In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988), reached the same conclusion.

> "Section 546(b) is designed to affirm the validity of statutes such as 9–301(2) of the U.C.C., which permits a purchase money security interest to be perfected within ten days after the debtor receives possession of the collateral ... Mechanics liens are also favored interests that are given retroactive effect.... If the particular statute has no retroactive effect, § 546(b) does not apply."

This court agrees with the above analysis. Section 546(b) is basically a time statute. It is not applicable unless the particular statute authorizes retroactive effect. The Washington statute at issue in this case (R.C.W. 7.28.230) has no such effect. Therefore, Traveler's may not perfect its inchoate lien on the rents simply by giving notice pursuant to § 546(b).

Both the *Investors Syndicate* and the *Johnson* cases discussed alternate methods by which the inchoate lien could be perfected. *Investors Syndicate* took a hard line approach and held that the inchoate lien could be perfected only upon the secured creditor obtaining possession of the property through foreclosure or upon obtaining the appointment of a receiver. The Ninth Circuit then suggested that when bankruptcy intervened, a possible third alternative could be utilized.

> "In the event that the bankruptcy court did not consent to foreclosure, the question immediately arises as to wheth-

---

1. *In re Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984), *cert. denied* 446 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr.D.Colo.1986);

*In re Sampson*, 57 B.R. 304 (Bankr.E.D.Tenn. 1986); *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.C.D.C.1985); *In re Fluge*, 57 B.R. 451 (Bankr.D.N.D.1985).

er the mortgagees are deprived of any remedy to obtain the rents. While there is ground for holding in the affirmative, in that in general, one purpose of the bankruptcy act is to abolish or restrict remedies, this court has held that where the bankruptcy court grants a petition of the mortgagee to sequester rents and profits, the mortgagee is entitled to such rents from the date of the filing of the petition."

*Investors Syndicate, supra,* at 621–622.

The court then went on to limit the application of a motion to sequester to those situations where the mortgagee would not obtain greater rights in bankruptcy than it would have had had the bankruptcy not been filed.

In *In re Johnson, supra,* the B.A.P. construed the Washington statute in accord with *Investors Syndicate.* However, the B.A.P. was not clear on exactly what was required to perfect the inchoate lien.

Relying on *Investors Syndicate,* we hold that R.C.W. § 7.28.230 does require some affirmative action beyond default in order for a secured party to establish its right to rents under a mortgage or deed of trust prior to foreclosure. However, it is unclear whether such action should be strictly limited to the types of action identified in *Investors Syndicate* (that is, obtaining possession, the appointment of a receiver, or an order of sequestration). *Id.* at 29.

The *Johnson* Court recognized the limitation expressed in *Investors Syndicate* that the motion to sequester could not grant the mortgagee greater rights than it would have had in state court.

This court concludes that the limitation should be interpreted to mean that if the applicable state law has procedures for rent sequestration, that method is available in Bankruptcy Court. *In re Prichard Pla-*

za *Associates Limited Partnership, supra.* R.C.W. 7.28.230 does not allow for a motion to sequester rents, rather, it provides for only two methods for perfecting an interest in rents, viz., obtaining possession or the appointment of a receiver.[2] In short, if a secured creditor under Washington law is allowed to make a motion in Bankruptcy Court for the sequestration of rents, it would be asserting a remedy not available in State Court. Accordingly, this Court concludes that Traveler's post-filing motion in this case to sequester rents is not permissible.

Notwithstanding, the court is concerned as to the practicalities involved in the positions of both the debtor and Traveler's. The debtor-in-possession which has fiduciary and accounting responsibilities to all of its creditors, including Traveler's, is now collecting the rents. It is obviously to the best interests of all parties that the rents be properly utilized to pay for the operation of the building, overhead, maintenance, insurance, taxes and the like. As long as the rents are so utilized and proper accountings are made, it would appear to make little difference whether they are collected by the debtor-in-possession, by Traveler's or by a third party. On the other hand, if the rents are being dissipated and/or used for improper purposes, the situation can always be brought before the Court which is the ultimate arbiter over the use and disposition of the funds and assets of the estate and of the debtor-in-possession.

## CONCLUSION

1. As of the date of the filing of the petition in bankruptcy, Traveler's held an inchoate lien in the rents generated by the debtor's building.

2. R.C.W. 7.28.230 provides the only means by which the lien can be perfected

**2.** It is questionable whether a receiver may be appointed by the bankruptcy court in light of the prohibition set forth in Section 105(b) of the Code. However, see *In re Memorial Estates, Inc.,* 797 F.2d 516 (7th Cir.1986), and *In the Cassidy Land and Cattle Co., Inc.,* 836 F.2d 1130 (8th Cir.1988), which held that a receiver could be appointed in bankruptcy proceedings where the receiver was a "genuine equity receiver" and not a disguised trustee. Judge Posner in *Memorial Estates* further cautioned that the appointment of a receiver for property which was the debtor's main asset might have the effect of emasculating the trustee's or the debtor-in-possession's role.

under State law, that is by obtaining possession, or by the appointment of a receiver.

3. The inchoate lien cannot be perfected under Section 546(b) of the Bankruptcy Code.

4. The lien cannot be perfected post filing by a motion to sequester rents.

5. If the debtor-in-possession is dissipating or not properly utilizing the rents, any party, including Traveler's, can bring the matter before the Court which is the ultimate arbiter over the use and disposition of the funds and assets of the estate and of the debtor-in-possession.

6. Counsel for the debtor will prepare and present on proper notice an order in conformity with this opinion.