**In re PARK AT DASH POINT L.P., a Washington Limited Partnership, Debtor.**

**Bankruptcy No. 89–04508.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Nov. 28, 1990.

al Way, Washington. The loan was evidenced by a Note which provided for monthly interest payments, with the principal due in full in two years (the debtor having exercised a six-month extension option).

To secure its performance under the Note, the debtor executed a Deed of Trust covering the Property, and also an Assignment of Rents. The Assignment of Rents purported to absolutely assign to Crossland the lessor's interest in all present or future leases affecting the Property, including the right to receive rents under such leases. Under the Assignment of Rents, Cross-Land granted back to the debtor the right to collect any rents, but only while there was no default by the debtor under the related Note and Deed of Trust.

Charles C. Robinson, Garvey, Schubert & Barer, Seattle, Wash., for debtor.

Shawn Otorowski, Ferguson & Burdell, Seattle, Wash., for Crossland.

Timothy W. Dore, Ryan, Swansen & Cleveland, Seattle, Wash., for trustee.

## MEMORANDUM DECISION RE: CROSS-LAND MORTGAGE CORPORATION'S MOTION TO PAY OVER OR SEQUESTER RENTS

SIDNEY C. VOLINN, Bankruptcy Judge.

This matter came before the court on the motion of CrossLand Mortgage Corp. ("CrossLand") to pay over or sequester rents collected during bankruptcy by the debtor from an apartment complex in which CrossLand has a recorded Deed of Trust and a recorded Assignment of Rents.

### FACTS

CrossLand Mortgage Corp. ("Crossland") loaned approximately $11,000,000 to the debtor in order to finance the debtor's 280–unit apartment development on certain real property ("the Property") located in Feder-

The debtor made the monthly interest payments until defaulting on the payment due May 1, 1989. CrossLand then, on June 9, 1989, commenced a state court action seeking the appointment of a receiver to collect the rents. The debtor filed this bankruptcy case on June 19, 1989, several hours before the hearing on CrossLand's motion to appoint a receiver.

On August 7, 1989, CrossLand moved this court to order the debtor to pay over, or sequester, the rents collected under leases affecting the Property. The debtor and University Savings Bank ("University Savings"), which holds a junior Deed of Trust on the Property, each oppose CrossLand's motion.

The debtor also filed a cross-motion requesting that, should this court find that the rents are cash collateral, the debtor be authorized to use such cash collateral for the management of its estate. University Savings also urged this result in its opposition to CrossLand's motion. The debtor and University Savings each contend that the value of the Property is $15,900,000,[1] and that the secured claims against it amount to approximately $12,200,000, in-

---

1. University Savings bases its valuation on the debtor's schedules. The debtor asserts that the valuation is based on an appraisal dated March 21, 1989. There are no affidavits, declarations, testimony, or other evidence in the record in support of, or in opposition to, the debtor's valuation.

cluding CrossLand's claim of approximately $11,000,000.

CrossLand has not filed any express opposition to the motion requesting that the debtor be permitted to use cash collateral, nor any challenge to the debtor's valuation of the Property. However, opposition is implicit in CrossLand's motion for turnover or sequestration of the rents.

## ISSUE

This motion brings before this court the controversial issue of the nature of the rights of a secured creditor under an assignment of rents pertaining to real property of the bankruptcy estate. Cases decided in this and various other jurisdictions have dealt with this issue, reaching divergent results and engendering a sizeable body of commentary, some of which is referred to below. In essence, the issue is whether under state law the secured creditor must take some enforcement action, beyond recordation of an assignment of rents, in order to perfect, enforce, or render "choate" its right to rents, and further, the effect of bankruptcy on that question.

## DISCUSSION

### A. State Law Governing Assignments of Rents

The starting point for the analysis of a mortgagee's rights to rents collected during bankruptcy is applicable state law. *See* § 522(b) [2]; *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); 2 *Collier on Bankruptcy* ¶ 363.02, p. 363–15 n. 1a (15th ed. 1986) (and cases cited therein). An understanding of the controlling Washington statute, which was originally enacted in 1869, requires review of the common and statutory law that preceded it, the amendments enacted in 1969 and

1989, and the caselaw interpreting the relevant statutes in their various mutations.

### 1. *Pre–Statute Common Law*

Under the common law in effect prior to 1869, a mortgagee had an absolute right to obtain possession of the mortgaged property at any time after default, if not voluntarily then through an action in ejectment.[3] *Norfor v. Busby*, 19 Wash. 450, 452, 53 P. 715 (1898); *see also Teal v. Walker*, 111 U.S. 242, 247–51, 4 S.Ct. 420, 423–25, 28 L.Ed. 415, 417–19 (1883) (construing an identical Oregon statute). After entering into possession, the mortgagee was entitled to collect the rents, but the mortgagee had no right to rents paid before the mortgagee obtained possession of the mortgaged property; the right to possess the real property during a particular period of time was treated as inseparable from the right to assign, or sell, that right and the entitlement to the price received therefor, *i.e.*, the rent. *Teal v. Walker*, 111 U.S. at 248–51, 4 S.Ct. at 423–25, 28 L.Ed. at 417–19.

### 2. *1869 Statute*

In 1869, the territorial legislature changed Washington law by a statute which provided that

> A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law.

Rem.Comp.Stat., § 804, Session Laws, 1869, p. 130, § 498 (current version at RCW 7.28.230).[4] This had a dramatic impact on the right of mortgagees to collect rents because that right remained an incident of possession, as it was at common law. Thus the mortgagee had no means of enforcing its security interest in rents paid prior to the completion of a foreclosure sale (unless the mortgagee voluntarily relinquished pos-

---

**2.** Unless otherwise specified, section and chapter references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**3.** Of course, the mortgage and related security instruments could limit the mortgagee's rights to less than their maximum allowable extent under applicable law. This discussion assumes an assignment of rents that grants the mortgag-

ee right to collect the rents upon default in the secured obligation, which is the case for the Assignment of Rents held by CrossLand.

**4.** This statute shall be referred to herein as "the original version of RCW 7.28.230," although the statute was not codified as such until long after its original enactment.

session). *Norfor v. Busby*, 19 Wash. 450, 453–55, 53 P. 715 (1898) ("the statute cannot be evaded by taking the most valuable incidents of possession from the mortgagor under the guise of rents and profits."); *Teal v. Walker*, 111 U.S. 242, 247–51, 4 S.Ct. 420, 423–25, 28 L.Ed. 415, 417–19 (1883) (construing Oregon's identical statute: "This provision ... establishes absolutely the rule that the mortgagee is not entitled to the rents and profits until he gets possession under a decree of foreclosure. For if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support.").

### 3. *1969 Amendment*

This statute which had existed for 100 years, was amended in 1969 by the addition of a proviso which followed on the last word of the former version of the statute, quoted above:

> *Provided*, That [A] nothing in this section shall be construed as any limitation upon the right of the owner of real property to mortgage, pledge or assign the rents and profits thereof, [B] nor as prohibiting the mortgagee, pledgee or assignee of such rents and profits, or any trustee under a mortgage or trust deed either contemporaneously or upon the happening of a future event of default, from entering into possession of any real property, other than farm lands or the homestead of the mortgagor or his successor in interest, for the purpose of collecting the rents and profits thereof for application in accordance with the provisions of the mortgage or trust deed or other instrument creating the lien, [C] nor as any limitation upon the power of a court of equity to appoint a receiver to take charge of such real property and collect such rents and profits thereof for application in accordance with the terms of such mortgage, trust deed or assignment.
>
> (2) Until paid, the rents and profits of real property constitute real property for the purposes of mortgages, trust deeds or assignments whether or not said rents and profits have accrued. The provisions

of RCW 65.08.070 [the real property recording statute] as now or hereafter amended shall be applicable to such rents and profits, and such rents and profits are excluded from Article 62A.9 RCW [the Uniform Commercial Code].

RCW 7.28.230 (1987 ed.) (bracketed labels added to certain clauses for ease of identification below) (the first subparagraph of the amended statute, consisting of the former statute and the new proviso, was numbered subparagraph (1)). In analyzing the effect of this amendment, it is important to keep separate the concepts of creation, perfection, and enforcement of a security interest. *See generally*, Averch, *Rental Income as Cash Collateral*, 93 Com.L.J. 516, 520–24 (Winter 1988); McCafferty, *The Assignment of Rents in the Crucible of Bankruptcy*, 94 Com.L.J. 433, 471–75.

> "[P]erfection ... means the process by which the security interest ... achieves a status where it cannot be avoided by an intervening third party.
>
> . . . .
>
> "Perfection" is thus a concept involving the relative interests of the lien-holder and an intervening third party. It does not deal with the relationship between the debtor and the secured party, or between the secured party and the collateral property. Those latter relationships raise only the question of "enforcement" of the security interest."

McCafferty, *supra*, at 471–72.

The first clause of the proviso added by the 1969 amendment (denoted "[A]" in the quotation above) provides that the statute does not prohibit the creation of security interests in rents. The second subsection of RCW 7.28.230, as amended in 1969, provides that the right to receive rents is real property, and that security interests in rents are governed by RCW 65.08.070, which provides:

> A conveyance of real property ... may be recorded in the office of the recording officer of the county where the property is situated. Every conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration

from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded.

The 1969 amendment contains no other provisions pertaining to the rights of a mortgagee vis a vis a third party, or perfection. It is clear that the Washington State Legislature intended that the mortgagee's right to the rents, in terms of perfection, be symmetrical with the mortgagee's right to the real estate. Recordation would render the mortgagee's security interest in both the real estate and the rents paramount to any subsequent interest.

The remainder of the 1969 proviso (denoted clauses [B] and [C] above) discusses methods of enforcement. Those clauses do not concern the rights of a mortgagee vis a vis third parties, but rather deal with the mortgagee's access to the collateral (the rents), which is a matter of enforcement. The opening language of the proviso ("nothing in this section shall be construed as any limitation ...") implies that the 1969 amendment did not create any new rights or remedies, but rather revived, or left intact, certain rights and remedies that existed before the enactment of the original version of the statute.

As discussed above, at common law, the mortgagee was entitled to take possession of the mortgaged property upon default, and after taking possession, to collect the rents. The Washington statute in its original form limited the mortgagee's right to take possession of the property, and therefore the ability to enforce a security interest in rents. Clause [B] of the 1969 amendment restored the mortgagee's common law right to take "possession of any real property, other than farm lands or the homestead of the mortgagor or his successor in interest, for the purpose of collecting the rents and profits thereof."

As an alternative remedy, clause [C] of the amendment provided that the statute was not to be construed "as any limitation upon the power of a court of equity to appoint a receiver to take charge of such real property and collect such rents and profits thereof." Prior to the enactment of the original version of RCW 7.28.230, a mortgagee was entitled to the appointment of a receiver in a foreclosure action "when [the mortgaged] property is insufficient to discharge the debt, to secure the application of the rents and profits accruing, before a sale can be had." Norfor v. Busby, 19 Wash. 450, 452, 53 P. 715 (1898) (quoting a statute originally enacted in 1854, and now codified at RCW 7.60.020(4)). The original version of RCW 7.28.230 eliminated this basis for the appointment of a receiver because the mortgagee was no longer permitted to deprive the mortgagor of possession prior to the completion of the foreclosure procedure, and the right to collect rents was one of the essential incidents of possession. Norfor v. Busby, 19 Wash. 450, 452–55, 53 P. 715 (1898); Western Loan & Bldg. Co. v. Mifflin, 162 Wash. 33, 39–40, 297 P. 743 (1931). But with the 1969 amendment specifically lifting any restriction against the pre-foreclosure appointment of a receiver to collect the rents, the appointment of a receiver under RCW 7.60.020(4) is again an available remedy for enforcing an assignment of rents. Waldron v. Northwest Acceptance Corp. (In re Johnson), 62 B.R. 24, 28 (9th Cir. BAP 1986); Investors Syndicate v. Smith, 105 F.2d 611, 620 (9th Cir.1939) (construing an Oregon statute which was originally identical to the original Washington statute, and was amended in 1927 by an amendment nearly identical to the Washington 1969 amendment).

Thus after the enactment of the 1969 amendment, assignments of rents are permitted, and are perfected by recording under RCW 65.08.070. They may be enforced before foreclosure by the appointment of a receiver under RCW 7.60.020(4), or by obtaining possession before foreclosure either voluntarily, or involuntarily if the property is neither farm land nor homestead. Nothing in the 1969 amendment abrogated the long-standing legal principle that the right to collect rents is an incident of possession. Accordingly, until the transfer of possession to the mortgagee or to a receiver, both the right to possession and the right to collect rents remained with the mortgagor.

### 4. *"Choate" vs. "Inchoate" Liens*

The relationship between the timing of enforcement, and the specific rents to which the mortgagee is entitled, has engendered the description of security interests in rents as either "choate" or "inchoate." *See, e.g., Investors Syndicate v. Smith,* 105 F.2d 611, 617 (9th Cir.1939); *Waldron v. Northwest Acceptance Corp. (In re Johnson),* 62 B.R. 24, 29 (9th Cir.BAP 1986); *In re Ass'n Center Ltd. Partnership,* 87 B.R. 142, 145 (Bankr.W.D.Wash. 1988). Functionally, these designations have depended on whether a security interest in rents had been enforced by one of the permitted enforcement mechanisms (possession or the appointment of a receiver); the interest was termed "inchoate" if it was as yet unenforced, and therefore the mortgagee's interest in the rents remained prospective, not yet having risen to the level of the actual right to collect the rents. *Investors* at 617; *Johnson* at 29; *Ass'n Center* at 145. The mortgagor is entitled to any rents paid while the assignment remains unenforced, or "inchoate." *Investors* at 620–22; *Johnson* at 29; *see also Teal v. Walker,* 111 U.S. at 248–51, 4 S.Ct. at 423–25, 28 L.Ed. at 417–19.

Regardless of the timing of enforcement, the recording of the assignment of rents perfects it, or ensures that it will be valid as against any subsequent "purchaser or mortgagee" of the same real property. RCW 7.28.230(2), 65.08.070. This is so irrespective of the fact that until enforced, the mortgagor retains the right to collect rents that are paid, which upon payment cease to be "real property," RCW 7.28.230, and therefore may escape the effect of the assignment of rents.

As caselaw dealing with assigned rents has developed, the distinction between the concepts of perfection and enforcement has become blurred, leading to the association of the term "perfected" with the term "choate." *See, e.g., Waldron v. Northwest Acceptance Corp. (In re Johnson),* 62 B.R. 24, 28–29 (9th Cir.BAP 1986); *In re Ass'n Center Ltd. Partnership,* 87 B.R. 142, 144–

47 (Bankr.W.D.Wash.1988). Despite the confusion of those terms, the cases have consistently treated the term "choate" as functionally related to enforcement, and have held that the mortgagee has no right to rents paid before the enforcement of the assignment of rents. *Investors* at 617, 620–22; *Johnson* at 29; *Ass'n Center* at 145. These cases focused on the enforcement aspect of the statute and do not hold that a properly recorded assignment of rents is not perfected until it is enforced. Such a holding would be in contravention of RCW 7.28.230(2) and 65.08.070.

### 5. *1989 Amendment*

In 1989 RCW 7.28.230 was again amended, this time by the addition of a third subsection providing:

> (3) The recording of an assignment, mortgage, or pledge of unpaid rents and profits of real property, intended as security, in accordance with RCW 65.08.-070, shall immediately perfect the security interest in the assignee, mortgagee, or pledgee and shall not require any further action by the holder of the security interest to be perfected as to any subsequent purchaser, mortgagee, or assignee. Any lien created by such assignment, mortgage, or pledge shall, when recorded, be deemed specific, perfected, and choate.

The first sentence of this amendment confirms what we believe was already the state of the law, as established by subsection (2) (enacted by the 1969 amendment): security interests in rents are fully perfected by record action. As discussed above, this was the state of the law when *In re Ass'n Center Ltd. Partnership,* 87 B.R. 142 (Bankr.W.D.Wash.1988), was decided. The legislative history accompanying the 1989 amendment supports our interpretation of the state law in effect prior to the 1989 amendment, and makes it clear that the 1989 amendment was to clarify the ambiguity reflected in, or engendered by, the opinion in *Ass'n Center.* *See* Final Bill Report, S.B. 5771, 1989 Wash.Laws Ch. 73, p. 371, 51st Legislature (1989).[5] Thus the

---

**5.** The pertinent portion of the legislative report provides:

BACKGROUND:

aspect of the 1989 amendment explicitly stating that recording perfects an assignment of rents either clarified the state of the law as it already existed prior to the amendment, or was a legislative clarification of an ambiguity in the law, and as such is retroactive. *See, e.g., Overton v. Economic Assistance Auth.,* 96 Wash.2d 552, 557–58, 637 P.2d 652 (1981); *Johnson v. Morris,* 87 Wash.2d 922, 925–26, 557 P.2d 1299 (1976) (and cases cited therein); *Marine Power & Equip. Co. v. Human Rights Comm'n,* 39 Wash.App. 609, 614, 694 P.2d 697 (1976).[6]

The second sentence of the 1989 amendment adds nothing to the first, except that it adds "choate" to the list of attributes that recordation bestows upon an assignment of rents. Based upon the preceding discussion, this could be argued to imply that an assignment of rents confers upon the mortgagee the right to collect the rents from the date of recording. The legislature enacted the 1989 amendment in response to what it considered to be misleading discussion in the caselaw suggesting that a security interest not as yet enforced or "choate," is unperfected. The legislative history makes it clear that the focus of the amendment was on perfection, not mechanisms of enforcement. We therefore conclude that the term "choate" was in-

cluded in the 1989 amendment to make it clear that perfection was accomplished by recording, and not to change the state law relative to means of enforcing an assignment of rents. We note further that the 1989 amendment in any event is remedial in nature. Such legislation may be applied retroactively. *See Macumber v. Shafer,* 96 Wash.2d 568, 637 P.2d 645 (1981), holding that, because of its remedial character, amendment of a statute increasing a homestead exemption was retroactive as to pre-amendment creditors.

◼ In summary, state law regarding the perfection and enforcement of an assignment of rents is the same after the 1989 amendment as it was before: assignments of rents are perfected by recording, and the mortgagee obtains the right to collect rents only after enforcing its security interest, which may be accomplished either by obtaining possession of the real property, or by the appointment of a receiver. Nothing in RCW 7.28.230 changes the common law principle that the right to collect rents is an incident of possession, and therefore that the mortgagee is not entitled to rents paid before the mortgagee obtains possession, either directly or through a receiver. The Washington Supreme Court

Federal bankruptcy court must apply state law in deciding cases involving the validity of a mortgagee's security interest. In a recent case, a federal bankruptcy court interpreted Washington State property security laws in a way which some believe to be contrary to state legislative intent.

The Washington statute is generally considered to provide that one who holds a mortgage in real property may perfect an assigned security interest in the rents and profits of the mortgaged property simply by recording the mortgage and assignment.

The Bankruptcy Court for the Western District of Washington held in May, 1988 that an assignment of rents taken as security for a loan is an unperfected lien which is not perfected until the lender takes possession of the rents or has a receiver appointed.

It is suggested that an ambiguity in the current statute contributed to the court decision. It is suggested that the statute be amended to clarify legislative intent that a lender obtains a perfected lien and security interest in the unpaid rents once it has recorded a mortgage or assignment of rents.

SUMMARY:
The assignment of rents and loans for security are perfected as of the time of recording and no further action by the holder of the security interest is required to perfect the security interest.

6. We note that the legislature may not be "empowered to retroactively 'clarify' an existing statute, when that clarification contravenes the construction placed upon that statute by this court. Such a proposition ... would effectively be giving license to the legislature to overrule this court, raising separation of powers problems." *Johnson v. Morris,* 87 Wash.2d at 926, 557 P.2d 1299; *see also Overton,* 96 Wash.2d at 557–58, 637 P.2d 652; *Marine Power,* 39 Wash.App at 614, 694 P.2d 697. There is some question as to whether the concern directed towards the separation of the powers of the state legislature and the state supreme court would apply to federal courts' interpretations of state law. However, we conclude that even in light of *Ass'n Center,* state law was not clearly contrary to the first sentence of the 1989 amendment.

recognized this after the enactment of the original 1869 version of the statute, *Norfor v. Busby*, 19 Wash. 450, 453–55, 53 P. 715 (1898); *Teal v. Walker*, 111 U.S. 242, 247–51, 4 S.Ct. 420, 423–25, 28 L.Ed. 415, 417–19 (1883), and nothing in the 1969 or the 1989 amendment changed it.

## B. Effect of Bankruptcy Code

### 1. *Butner v. United States*

The Bankruptcy Code, in dealing with the rights of parties, incorporates state law to a significant degree. However, the rights of parties may be created, adjusted, or dissolved on grounds independent of state, law as provided for in the Bankruptcy Code. The issue here is whether Federal law created such a change. The application of federal bankruptcy law to the state law governing assignments of rents was the subject matter of the Supreme Court's ruling in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In that case, the Supreme court was faced with an interpretation of a secured creditor's rights with respect to rents collected during bankruptcy on the debtor's property located in North Carolina. The Court limited its analysis to the interaction of state law and former Bankruptcy Act with respect to the interpretation and enforcement of assignments of rents. 440 U.S. at 51, 99 S.Ct. at 916, 59 L.Ed.2d at 140. The Court noted that

> The constitutional authority of Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States" [citing U.S. Const. art. I, § 8, cl. 4] would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankrupt estate. But Congress has not chosen to exercise its power to fashion any such rule.... Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.

440 U.S. at 54, 99 S.Ct. at 917–18, 59 L.Ed.2d at 141 (footnotes omitted). The Court rejected caselaw that had developed in the Third and Seventh Circuits providing that "federal [bankruptcy] law affords

mortgagees an automatic security interest in rents and profits when state law would deny such an automatic benefit and require the mortgagee to take some affirmative action before his rights are recognized." 440 U.S. at 52, 56, 99 S.Ct. at 916, 918, 59 L.Ed.2d at 141, 142. Rather, the Court held that the bankruptcy courts should only "take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918, 59 L.Ed.2d at 142. While the Court held that the mortgagee's state-law rights to rents were not expanded in bankruptcy, the Court was careful to protect those rights state law did grant the mortgagee:

> [O]ur decision avoids the opposite inequity of depriving a mortgagee of his state-law security interest when bankruptcy intervenes. For while it is argued that bankruptcy , may impair or delay the mortgagee's exercise of his right to foreclosure, and thus his acquisition of a security interest in rents according to the law of many States, a bankruptcy judge familiar with local practice should be able to *avoid this potential loss by sequestering rents* or authorizing immediate state-law foreclosures.

440 U.S. at 56–57, 99 S.Ct. at 919, 59 L.Ed.2d at 143 (emphasis added).

The federal bankruptcy law that was controlling for the purposes of the *Butner* decision was the former Bankruptcy Act, which has since been superceded by the Bankruptcy Code. Thus while the principles expressed in *Butner* still apply, in applying the Bankruptcy Code it must be considered whether and to what extent Congress has now "chosen to exercise its power to fashion" a rule determining a mortgagee's right to rents flowing from mortgaged property of a bankruptcy estate, or otherwise alter applicable state law.

### 2. *Sections 541 and 544*

Under § 541 the commencement of a bankruptcy case creates an estate consist-

858

ing of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). In addition to this broad language, § 541(a)(2) lists a number of more specific kinds of property that are included in the bankruptcy estate, including "rents, or profits of or from property of the estate." § 541(a)(6).

The estate's interest in such property, however, may be subject to other parties' interests in the same property. The relationship between the estate's interest and the interests of such third parties is determined by § 544. For the purposes of Washington real property, the pertinent portion of § 544 provides:

> (a) The trustee shall have ... the rights and powers of ...—
>
> .    .    .    .    .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus the estate's interest in real property, which under RCW 7.28.230(2) includes unpaid rents, is subject to any security interest in such property or rents that would be valid as against a bona fide purchaser (i.e., a perfected security interest). As discussed above it is recording, pursuant to RCW 65.08.070, that renders an assignment of rents valid as against bona fide purchasers (i.e., that perfects it). If a security interest is unenforced as of the date of the bankruptcy petition, then the secured creditor may not have an immediate right to possession of the collateral, but that does not render the security interest ineffective as against the trustee, whether the collateral be accounts, real property, rents, or otherwise.

### 3. *Section 362*

The commencement of a bankruptcy case triggers the automatic imposition of a broad stay, or injunction, of proceedings to enforce claims against the debtor or against property of the debtor or the estate. § 362(a). Among the acts enjoined by the automatic stay are the perfection or enforcement of any lien against property of the debtor or the estate, or any act to obtain possession of property of the estate. § 362(a)(3), (a)(4), (a)(5). Thus the remedies available under Washington law for the enforcement of a security interest in rents are enjoined during a bankruptcy case.

■ The bankruptcy court must grant relief from the automatic stay, so as to allow the enforcement of a security interest, on either of two alternative bases:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) ... if—
>
> (A) the debtor does not gave an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

§ 362(d). The "adequate protection" basis establishes that the stay is not intended, and cannot by itself be applied, so as to deprive a secured creditor of the value of collateral in which the creditor has a perfected security interest, which as discussed above would include rents from real property subject to a recorded assignment of rents. To the extent the automatic stay threatens such a security interest, relief from stay must be granted under § 362(d)(1).[10] *See Butner v. United States*, 440 U.S. 48, 56–57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136, 143 (1979). Delay of the secured creditor's access to the collateral, by itself, does not justify relief from stay, so long as the creditor's interest in the value of the collateral is protected. *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct.

---

**10.** This would be the case where, for example, the value of the underlying real property is less than the secured debt, rents are being paid monthly, the automatic stay prevents the mortgagee from enforcing the right to receive the rents, and the debtor is able to dissipate the rents it receives in a manner that does not benefit the mortgagee or enhance the value of the mortgaged property.

626, 98 L.Ed.2d 740 (1988). *Compare Crocker Nat'l Bank v. Am. Mariner Indus. (In re Am. Mariner Indus.)*, 734 F.2d 426, 435 (9th Cir.1984) (which *Timbers* overruled). We note, however, that in the case of an undersecured mortgagee, a delay in rendering an assignment of rents "choate" goes beyond merely delaying the creditor's access to the collateral; it also reduces the amount of collateral that will ever be available to apply towards the secured debt because rents paid prior to enforcement of the assignment of rents would escape the effect of the assignment of rents.

Likewise, relief from stay should be granted in the presence of the conditions specified in § 362(d)(2).

### 4. *Sections 363 and 552*

Ordinarily, until enforcement of an assignment of rents, the mortgagee is entitled to the rent payments. Under the Bankruptcy Code, however, the trustee's use of funds that fall within the definition of "cash collateral" is inhibited.[11] "Cash collateral" includes

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Thus a prerequisite to the classification of cash as "cash collateral" is that "an entity other than the estate have an interest" in such cash. This language alone does not create an interest in rents, but would recognize such an interest created by state law.

In addition to the general description, the definition of "cash collateral" specifically includes "rents," but only those rents "subject to a security interest as provided in section 552(b)." Section 552(b) provides:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Thus like the general definition in § 363, the specific reference to "rents," by referring to § 552(b), also defers to state law in determining whether rents paid to the trustee constitute cash collateral.

■ Applied to rents, both the general and the specific definitions turn on whether under state law a secured creditor has an interest, or more specifically, a lien in the rents. As discussed above, under state law, the holder of a lien in rents has no right to collect any rent payments made before the lien is enforced, or rendered "choate," such as by possession of the real property or by the appointment of a receiver to collect the rents. But this does not preclude the lienholder's having rights under state law which although unenforced, nevertheless under bankruptcy law rise to the level of a "security interest" in the rents sufficient to render the rents cash collateral.

The distinction between perfection and enforcement, as it concerns cash collateral, is illustrated by the case of security inter-

---

11. Because of the ready availability if cash collateral to estates which by the nature of bankruptcy are often cash poor, creditors holding security interests in cash collateral and subject to the automatic stay should not be placed in the position of helplessly watching their collateral dissipated. Nor should the debtor be de-
nied access to the funds if he can show that the creditor will not be prejudiced by use thereof. In this connection we note that the debtor filed the voluntary petition in this case several hours before the state court hearing on CrossLand's application to collect the rents.

ests in accounts. The secured creditor has no right to receive payments on the collateral accounts until enforcement (*e.g.,* by notice to the account debtor, pursuant to RCW 62A.9–502(1)). The security interest is perfected, however, by filing a financing statement. RCW 62A.9–302(1). If bankruptcy intervenes after filing but before enforcement, then although the secured creditor does not have the right to collect the rents (*i.e.,* rendering the interest is "inchoate"), and the automatic stay prevents enforcement (*i.e.,* the interest "choate"), the creditor does have a perfected security interest and the payments to the debtor or trustee on the accounts constitute cash collateral.

It follows that an unenforced assignment of rents constitutes an interest in rents sufficient to render the rents cash collateral when paid.

Section 363 prohibits the trustee's use of cash collateral unless the creditor with an interest therein consents, or the court authorizes such use. § 363(c)(2). So long as the secured party requests protection,

> the court ... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest.

§ 363(e). Again, as in the case of § 362(d), the Bankruptcy Code provides protection for the secured creditor's state law security interest.

### 5. *Adequate Protection*

Both §§ 362(d) and 363(e) require that the secured creditor's interest in the rents be given adequate protection. In Washington, an assignment of rents confers upon the mortgagee the right, upon default, to enforce its right to collect rents either by entering into possession of the mortgaged property (other than farm land or homestead), or by the appointment of a receiver to collect the rents. Because the automatic stay prevents the mortgagee from pursuing those enforcement mechanisms, the mortgagee is threatened not only with the prospect of the rents being dissipated as a practical matter (which §§ 363(c)(2) and (e) prevent), but also with the underlying fact that the mortgagee has not and can not take the actions required under state law

to establish the legal right to collect the rents.

■ One solution would be to grant relief from stay under § 362(d)(1) to allow the mortgagee to pursue state law remedies. But we do not believe that the only means to protect and ultimately enforce an assignment of rents need be exclusively dependent on access to the jurisdiction of the state court. Both the Supreme Court and the Ninth Circuit have suggested that the Bankruptcy Courts have the power to protect the mortgagee's security interest in the rents either by "authorizing immediate state-law foreclosure," *or* "by sequestering rents." *Butner v. United States,* 440 U.S. 48, 56–57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136, 143 (1979); *see also Investors Syndicate v. Smith,* 105 F.2d 611, 621–22 (9th Cir.1939). Although both of those cases were decided under the former Bankruptcy Act, the court's powers are at least as broad under the Bankruptcy Code. Section 363(c)(2) provides, in effect, for the automatic sequestration of rents that are subject to a perfected security interest. Under § 361(3), the bankruptcy court may provide adequate protection by "granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest," while § 105(a) grants the bankruptcy court the power to "issue any order ... necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." We hold that under these authorities, the bankruptcy court's powers are sufficiently broad to allow it to enforce a mortgagee's security interest in rents when and to the extent a state court would do so.

■ We are of the view that enforcing the secured creditor's interest in the rents by declaring the mortgagee to be entitled to the rents collected after a certain date when the mortgagee would have been able to enforce that interest in state court but for the automatic stay is a proper exercise of bankruptcy jurisdiction. Enforcing or providing adequate protection for that interest, "afford[s] in federal bankruptcy court the same protection [the mortgagee]

would have under state law if no bankruptcy had ensued." *See Butner,* 440 U.S. at 56, 99 S.Ct. at 918, 59 L.Ed.2d at 142. Thus while enforcement by the bankruptcy court is not one of the remedies articulated by state law, it is available under federal bankruptcy law, and can be implemented in appropriate circumstances.

Assuming that the secured creditor would be entitled to enforce its assignment of rents under state law, ordinary cash collateral considerations would apply. For example, if the value of the real property is less than the outstanding secured obligation, the secured creditor may be able to demonstrate that its security interest can only be protected by allowing such enforcement of the assignment of rents as is necessary under state law to render it "choate" and subject future rents to it. The trustee, on the other hand, may be able to demonstrate that the application of some or all of the rents to the maintenance of the real property is necessary to protect the value of the creditor's interest in future rents and the real property, and therefore is not inconsistent with providing the creditor adequate protection, even if the creditor is undersecured.

### 6. *Section 546(b)*

To complete this discussion, we note that § 546(b) has no application to the perfection or enforcement of an assignment of rents.[12] Because an assignment of rents is perfected when recorded, and recording perfects the interest as of the date of such recording (and not retroactively), § 546(b) has no application to the perfection of an assignment of rents. The enforcement actions of obtaining possession or seeking the appointment of a receiver are not acts required to accomplish perfection, and therefore those enforcement acts are not subject to § 546(b).

### CONCLUSION

CrossLand holds a perfected security interest in unpaid rents related to the Property, and that security interest renders the rents collected by the debtor (or trustee) cash collateral. It may be that CrossLand's interest in the Property and the rents is adequately protected, based on the debtor's uncontroverted valuation of the real property, according to which the value of the Property exceeds the amount of CrossLand's secured claim by approximately $5,000,000. We are not, however, prepared to grant the debtor's Motion for Order Authorizing Use of Cash Collateral. The focus to date has been on whether the rents are properly characterized as cash collateral, and as a result, the parties have not fully litigated the issues relevant to the use of cash collateral, such as the value of the collateral and the manner in which the cash collateral would be used.

The debtor, pending further order of the court, shall continue to sequester the rents and, as provided for by prior order, expend therefrom funds necessary to preserve, maintain and administer the subject property.

The debtor's Motion for Order Authorizing Use of Cash Collateral shall be deemed filed and served as of the date of this decision. Should the debtor wish to prosecute that motion, it shall arrange for a hearing thereon and give proper notice thereof. CrossLand is entitled to adequate protection of its security interest, and may move for relief from stay in accordance with § 362(d) if it so chooses.

---

12. Section 546(b) provides that

    The rights and powers of a trustee ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.